BLOOR and another, Executors, Respondents, vs. SMITH, imp., Appellant.

*October 16 — December 17, 1901.*

*Testamentary trustees: Power to mortgage: County courts: Jurisdiction: Guardian ad litem: Vacating judgment: Foreclosure of mortgages: Abuse of discretion: "Notice" of entry of judgment: Minors: Excusable neglect: Laches: Advice of counsel: Error in confirming sale: Terms of relief against judgment.*

1. A will appointing an executrix and testamentary trustee and conferring on her power of sale over the testator's property generally, but prohibiting sale of the homestead and adjoining premises during the minority of the testator's youngest child, confers no power to mortgage said premises.
2. The power of the county court over the title to real estate in the hands of testamentary trustees is strictly limited by sec. 4030, Stats. 1898, and its acts in violation thereof are not merely erroneous, but are void as to those interested over whom personal jurisdiction is not obtained by notice or by their appearance or assent.
3. Where an estate has been adjudged settled by the probate court and the property turned over to a testamentary trustee, the guardian *ad litem* appointed for infant heirs on the final settlement cannot by virtue of such appointment act as such guardian on an application by the trustee for authority to mortgage a portion of the trust estate.

4. Upon a motion under sec. 2832, Stats. 1898, to vacate a judgment and for leave to defend, if the papers, including the proposed answer, show that the moving party has a good defense and that judgment has been suffered through mistake, inadvertence, surprise, or excusable neglect, it is an abuse of discretion to refuse relief.

5. On an application to vacate a judgment foreclosing a mortgage it appeared that when the action was commenced the applicant was a girl under age, without knowledge or understanding of the steps necessary to protect her interests; that the mortgaged property consisted chiefly of the homestead of her father which he had devised in trust for the benefit of the applicant and other heirs; and that the guardian *ad litem* appointed at the instance of the plaintiffs failed to call the attention of the court to a perfectly good defense of which both he and the plaintiffs must have had actual knowledge. *Held,* that the neglect of the applicant to defend was excusable, although her conduct would have been negligent in an ordinary suitor.

6. A motion to vacate a judgment under sec. 2832, Stats. 1898, is not too late if made within a year after the moving party obtained knowledge of the judgment, although more than a year had elapsed since its entry.

7. Delays of less than the year allowed by sec. 2832, Stats. 1898, for the making of a motion for the vacation of a judgment should not preclude the granting of the relief sought unless there are circumstances of acquiescence or of special injury to the plaintiffs resulting from acts induced by the delay.

8. On an application to vacate a judgment it appeared that knowledge of the judgment came to the applicant about the middle of November; that she immediately consulted attorneys and presented her motion January 2d following; that the motion was decided adversely during February for purely technical reasons, and without prejudice; and that in about a month a second application was made upon corrected papers. *Held,* insufficient to show laches.

9. An affidavit of advice of counsel is not necessary to the granting of relief from a judgment under sec. 2832, Stats. 1898.

10. Where a trial court should have granted a motion to vacate a judgment of foreclosure but instead confirmed a sale made under the judgment, the fact that the applicant had refused to give a bond to stay proceedings under the sale did not render the confirmation proper.

11. As a condition of relief from the judgment of foreclosure in such case the applicant should be required to pay to the plaintiff the rea-

sonable and necessary expenses incurred in entering the judgment, exclusive of stipulated attorney's fees; also motion costs and the expenses of making the sale; and, further, the amount paid by plaintiff in discharging tax liens, to the extent to which the same will inure to the applicant's benefit if she sustains her defense, with interest from the date of the report of sale.

APPEAL from orders of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Reversed.*

On January 3, 1900, the plaintiffs recovered a judgment of foreclosure and sale against the appellant, *Emma Maud Smith*, impleaded with her minor brother, John T. Smith, Jr., and her adult sister, Regina Smith, as testamentary trustee and personally, which judgment was based upon a mortgage on certain real estate in the village of Fox Lake, in Dodge county, executed by Regina Smith as testamentary trustee under the will of John T. Smith, deceased, which the complaint alleged was so executed pursuant to a power contained in the will of said John T. Smith, deceased, and an order of the county court dated September 26, 1896, authorizing and empowering it. On March 18, 1901, the appellant made motion for the vacation of this judgment and permission to defend, upon a proposed answer attached to her application, and upon an affidavit seeking to excuse her default. By the answer she denied all power in Regina Smith to execute the mortgage sued on. She alleged that John T. Smith, who died in May, 1893, by his will first directed his executors, Regina Smith and Ira B. Smith, to pay all debts; and, second, devised and bequeathed all real and personal estate to his said executors in trust, first, to pay to the daughter Regina Smith, as testamentary guardian of the two minor children, *Emma Maud* and John T. Smith, Jr., one third of the income of all the estate for the support and education of said minors, such payments to commence immediately and continue until the majority of the youngest child, John T. Smith, Jr., and at that time to deliver to

each of three of his children, Regina, *Emma Maud*, and
John T. Smith, Jr., one fourth of all the estate, real and
personal, with rights of survivorship. Said trustees were
further directed to pay the income of the remaining one-
fourth, after the majority of the minor children, to a fourth
child, a married daughter. The executors were empowered
as such to sell, dispose of, and convey all estate, and invest
or reinvest the proceeds thereof, in their discretion; but by
the sixth clause it was provided:

" I further direct my said executors not to sell my present
homestead situated in the village of Fox Lake, Wisconsin,
and all land premises owned by me adjoining the same, to-
gether with all [furnishings], but to keep the same intact
during the minority of my said son as and for the home of
my three children first hereinbefore mentioned, and for as
much longer a period of time as my said daughter Regina
may desire to occupy the same as her home; " and,

" Seventh, I hereby direct my said executors, upon the
sale or disposal of my homestead, adjoining lands, dwelling
house, and its contents, as aforesaid, to pay and deliver to
my said children, Regina, *Emma Maud*, and John ,T., Jr.,
the proceeds thereof in equal shares."

The executors having entered upon their trust, and being
unable to realize from assets, procured extensions of settling
the estate from time to time, until in May, 1896, upon the
ostensible authority of an order of the county court, they
borrowed $1,100, with which they paid up the claims which
had been allowed against the estate. In July, 1896, the
executors filed a final account, which, after amendment and
after notice, was duly allowed in September, 1896, and a final
order entered assigning and distributing all of the property
to Regina Smith as surviving testamentary trustee under
said will, said Ira B. Smith having resigned; such assign-
ment being subject to a charge for the $1,100 borrowed by
the executors to pay debts and certain expenses of adminis-
tration.

On the same day Regina Smith, as testamentary trustee,

filed petition representing the estate to be indebted for $1,100, borrowed as aforesaid; for $213.46, balance of fees due executors; for $100 of doctor's bill in last sickness of deceased; and for two months' allowance for support of the minors, $80,— total, $1,493.46; that, she being unable to sell other assets, the only available property out of which to realize money was the homestead. Thereupon, on the same day, and without the giving of any notice, the county court in form made an order authorizing said Regina Smith, as testamentary trustee, to borrow the sum of $1,500 for the purpose of paying the outstanding claims, and to execute to the lender a note and also a mortgage on specified premises, constituting the homestead of deceased and appurtenant lots mentioned in the will. The answer asserts that no guardian *ad litem* for this appellant or her brother John T. Smith, Jr., who were then both minors, was appointed; but that one Lueck, who had been appointed guardian *ad litem* in the proceedings for the settlement of the estate, appeared and pretended to consent to said order, but without any authority. It is further alleged that Regina Smith unlawfully, and without authority, thereupon, on November 13, 1896, executed a note and mortgage for $1,500 to one John J. Roberts, and that thereafter, on March 19, 1896, without any further attempted authorization, she borrowed from these plaintiffs the sum of $1,500, and gave therefor a note payable five years after date, together with mortgage on said homestead, which are the note and mortgage sued on in this action.

This answer was accompanied by an affidavit of the appellant showing that she was a minor at the time this action was commenced, October 30, 1899, and so continued until May 1, 1900; that, while the original summons was served upon her, she had no notice or knowledge of any attempt to appoint a guardian *ad litem* for her in that suit; that she was not at that time in said Dodge county, where notice for

the appointment of such guardian was attempted to be served; that she had no knowledge or understanding of the proceedings in the settlement of the estate or of her rights, and that she did not learn of the entry of the judgment in this action until about the middle of November, 1900; that thereupon she immediately consulted attorneys, and advised with them as to the proper course, and through them on the 2d day of January, 1901, prepared a petition to vacate the foreclosure judgment and be permitted to defend, which motion was afterwards denied, without prejudice to renewal of the same.

· This application was met by extended affidavits from plaintiffs' attorneys as to matters appearing upon the records of the county court in the estate of John T. Smith, and by the ex-county judge presiding in that court during the settlement of that estate; also setting forth in full the will of said John T. Smith. So far as matters in such affidavits are material to the controversy, they will be mentioned in the opinion.

On February 9th the plaintiffs proceeded to advertise sale under the foreclosure judgment for the 29th day of March. On the 26th day of March, 1901, when appellant's motion was returnable, a postponement was had until the 8th of April, and at the time of the postponement the appellant requested a stay of sale proceedings. The court entered an order for such stay, conditioned upon the giving of a bond by appellant in the sum of $250, with which condition she failed to comply, and sale was accordingly made, on March 29, 1901, for the sum of $2,105; which, after the payment of certain delinquent and past-due taxes, left a deficiency upon the judgment of about $25. Motion to confirm this sale was made on the 8th day of April, 1901, and heard with the appellant's motion to vacate the judgment. The court entered two orders, the first denying appellant's motion, and the second confirming the sale under the judgment, from

both of which the defendant *Emma Maud Smith* brings this appeal.

For the appellant there was a brief by *Bohmrich, Maher & Willrich,* and oral argument by *G. Willrich.*

For the respondents there was a brief by *Sawyer & Sawyer,* and oral argument by *H. W. Sawyer* and *E. W. Sawyer.*

The following opinion was filed November 5, 1901:

DODGE, J.   Appellant's application to set aside the judgment against her and to permit her to defend was addressed to the judicial discretion of the circuit court.   To warrant its allowance, two principal questions were presented for consideration: first, whether the proposed answer set forth a valid and sufficient defense; second, whether the applicant's default was excused and a proper equitable case for relief presented.   The first of these was a strict question of law, and must be reviewed as such.   To that end, turning to the proposed answer, we find a direct denial of any authority or power in Regina Smith to mortgage appellant's interest in the property involved.   We also find a full statement of the only pretense of authority which existed, namely, the will of John T. Smith, creating Regina a. testamentary trustee, conferring on her as such and as executrix power of sale over the testator's property generally, but prohibiting sale of the mortgaged premises during the minority of the youngest child, John T. Smith, Jr.   No argument is necessary to establish that this instrument conferred no power to effectively mortgage this property.   Authority to sell does not confer power to mortgage.   *Minnesota S. Co. v. Mc-Crossen,* 110 Wis. 316.   But even authority to sell the mortgaged premises is expressly denied by the instrument from which alone the trustee derived any power whatever.   It is urged, however, that because the county court made an order directing the trustee to mortgage, such power existed. So far as such order might affect appellant's property, it is

pretty clearly void; for no steps whatever were taken to notify her or to give her any day in court, not even to appoint a guardian *ad litem* to appear for her. The appearance, without appointment, by one who had been such guardian in the then fully completed proceedings for settlement of the estate, could serve no purpose. *Hubbard v. C. & N. W. R. Co.* 104 Wis. 160, 165.

But, apart from this consideration, we can find no such force for the order of the county court as respondents contend. The conveyance of title to land has always occupied a place of the highest dignity in the law, and the cases when that may be accomplished otherwise than by act of the owner are rare, and most of them created and carefully limited by statute. True, in an extreme case a court of general equity jurisdiction, may transfer title in order to preserve an estate from destruction. *Ruggles v. Tyson,* 104 Wis. 500. True, also, when the holder of title ought to convey and will not, a court of equity can, either by its decree or through its receiver, pass the title. Apart from a few such instances as these, however, it is believed that the power of the courts, and especially county courts, to make conveyances not authorized by owners must be found in statutes. The cases when the county court may perform such an act are specified, and, in deference to its drastic character, the manner of executing the power is carefully defined. In settlement of estates, title may be passed to raise money to pay debts, but only by virtue of ch. 167, Stats. 1898, and in strict compliance therewith. The interests of minors may be conveyed under some circumstances, but only because of express statutory authority and by the steps prescribed. Ch. 151, 171, Stats. 1898. In all these cases the proceeding to authorize sale of real estate is extrinsic to the general proceeding in which such real estate is involved, and the court has not jurisdiction over the parties in interest for the special proceeding merely because jurisdiction over them has been

acquired for the general one. Notwithstanding parties are before the county court for the purpose of the settlement of the estate, jurisdiction must be again acquired over them by due notice, or the proceedings under ch. 167 will be void as to such as are not notified and do not appear. *Gibbs v. Shaw,* 17 Wis. 197; *McCrubb v. Bray,* 36 Wis. 333; *O'Dell v. Rogers,* 44 Wis. 136, 172. In the light of the uniform policy of the law evinced by such statutes, and the decisions of courts thereon, we cannot doubt that the power of the county court over real-estate titles in the hands of testamentary trustees is strictly limited by sec. 4030, Stats. 1898, and that acts in violation thereof are not only erroneous, but beyond its power, and void as to those over whom personal jurisdiction is not obtained by notice or by their appearance or assent. The order on which respondents rely is not only violative of the express command of sec. 4030, that " no such order shall be made in violation of the terms of the trust," but it was made without the " notice to parties in interest " prescribed by that section and essential to jurisdiction over such parties. In this connection it should be observed that the applicant trustee stood in a position distinctly antagonistic to the appellant, and not as her representative, as does a guardian when applying for sale of land of an insane person for his welfare. *Mohr v. Manierre,* 101 U. S. 417; *Mohr v. Porter,* 51 Wis. 487. The application was in derogation of appellant's rights, namely, to mortgage real estate for the protection and benefit of the trustee, whose personal responsibility was pledged for the borrowed money sought to be repaid out of the proceeds of the mortgage. We are convinced, therefore, that from the allegations of the answer it appeared that the trustee was wholly without power to mortgage appellant's interest in the homestead property, even in the first instance. We need not, therefore, consider whether, if the original mortgage to Roberts had been authorized by the court's order, the latter

one, now in suit, to other persons and on different terms,. would be valid. The answer certainly stated a good and meritorious defense.

The second question is much the more difficult, for it involves an examination and review, not of strict questions. of law, but of the exercise of a discretionary power by the circuit court, in which his decision is not to be disturbed unless abuse of discretion be found. On this question we are left almost entirely without aid from the brief or argument of appellant's counsel, and have thus been obliged to make original search for authority. Our statute (sec. 2832) is to be given full force and effect, since by virtue thereof it has been held that the ancient remedies by bill of review for the correction of inequitable judgments recovered by mistake, surprise, or fraud have been done away with. It. is the substitute, under our Code, for a very important branch of remedial chancery jurisdiction. None the less, it is not to be extended beyond its fair meaning. It has received construction at the hands of this court very many times. As a result of those considerations, certain general propositions are put beyond dispute. While the vacation of a judgment upon an application under this section is within the discretion of the trial court, it is intended thereby that the discretion shall be exercised in a legal and judicial manner, not arbitrarily and according to whim, and not to subversion of the statute. If not exercised thus legally and judicially, an abuse of discretion is committed, which will be reviewed and corrected by this court. *McDougall v. Townsend*, 6 Wis. 198; *Wicke v. Lake*, 21 Wis. 410; *Stoppelfeldt v. M., M. & G. B. R. Co.* 29 Wis. 688; *McArthur v. Slauson*, 60 Wis. 293; *Cleveland v. Hopkins*, 55 Wis. 387; *Whereatt v. Ellis*, 70 Wis. 207; *Dunlop v. Schubert*, 97 Wis.. 135; *Pier v. Millerd*, 63 Wis. 33. It has also been decided that where the moving papers, including the proposed answer, show that the party has a good defense, and that.

judgment has been suffered through mistake, inadvertence, surprise, or excusable neglect, it is an abuse of discretion to refuse the relief authorized by this section. *Cleveland v. Hopkins*, 55 Wis. 390; *Whereatt v. Ellis, supra; Boutin v. Catlin*, 101 Wis. 545, 549.

That a good defense is stated we have already decided. It remains to be considered whether the entry of the judgment in the foreclosure action was induced by neglect which was excusable, by surprise, by inadvertence, or by mistake. That the conduct of the appellant would have been neglect in an ordinary suitor there can be no doubt; for, notwithstanding the service of process upon her, she made no defense. Was such neglect excusable? She was a girl and in her minority, not *sui juris*, not chargeable with the knowledge of affairs possessed by people ordinarily, not capable of waiving any rights by consent, and having no knowledge or understanding of the force of such proceedings. It has been held by this court that neglect to defend an action by an insane person is necessarily excusable. *Gerster v. Hilbert*, 38 Wis. 609; *Bond v. Neuschwander*, 86 Wis. 391. In the latter case it was said that, upon the showing of that fact and the statement of a good defense, the only proper course would be to vacate the judgment. Again, it has been held that neglect in reliance upon advice of counsel, and in consequence of incomplete comprehension of rights, is excusable. *Wicke v. Lake*, 21 Wis. 410. Also that neglect of counsel to present defenses which a party had rightfully relied on him to present will excuse the failure of the party to make such defense. *Stoppelfeldt v. M., M. & G. R. R. Co.* 29 Wis. 688; *Whereatt v. Ellis*, 70 Wis. 207; *Behl v. Schuette*, 95 Wis. 441. It seems to us that appellant presented a case within the reason of both of the foregoing holdings. She was legally incompetent to care for her own interests, and in fact without knowledge or understanding of the steps necessary to protect them in this action. She

was entitled, as a minor, to the anxious care of the court
and diligent protection at the hands of an officer thereof.
This she did not receive. The person attempted to be ap-
pointed her guardian *ad litem* at the selection of plaintiffs,
though with no purpose to injure her, as we fully believe,
neglected to bring to the court's attention a perfectly good
defense of which he had full knowledge, as also the plaint-,
iffs must have had, in fact as well as constructively. The
result is shocking. From the appellant, a minor, is taken
the homestead, in direct breach of her father's will, and the
proceeds are applied to the payment of debts from which
it was sacred. We are satisfied that her neglect to defend
the foreclosure action was excusable, and, a good defense
being stated by her answer, that denial of her motion to
vacate the judgment and receive her answer was an abuse
of the discretion vested in the circuit court, and disobedience
of the statute.

Various objections to appellant's application, involving
more or less of technicality, are urged by the respondents.
First, that the present application was not made until more
than a year after the entry of the judgment. But the ap-
pellant's affidavit of merits asserts that she had no knowl-
edge of the judgment until about four months before the
date of that affidavit, March 16, 1901. The right to move
for vacation of a judgment under sec. 2832, Stats. 1898,
exists for a year after notice of the judgment, and the
word "notice" has repeatedly been held to mean knowl-
edge. *Knox v. Clifford,* 41 Wis. 458; *Schobacher v. Ger-
mantown F. M. Ins. Co.* 59 Wis. 86. There is nothing to
throw doubt upon the allegation of want of knowledge,
for the appellant was absent from the state of Wiscon-
sin substantially the whole of the year 1900. Again, it
is urged that appellant was guilty of such delays as to
make interference with the judgment on her behalf inequita-
ble, and to preclude her therefrom. Inasmuch as the stat-

ute allows a year after knowledge of the judgment for making this motion, mere delays of less than that extent should not preclude one, unless there are circumstances of acquiescence or of special injury to the plaintiff resulting from acts induced by the applicant's delay. In the present case there is no doubt of due and reasonable diligence. The knowledge of the judgment having come to the appellant not until about the middle of November, 1900, she had consulted attorneys, had made the necessary investigation, and presented her motion to vacate the same on the 2d of January, 1901. That motion was not decided until well into February, when it was denied for purely technical reasons and without prejudice. In about one month thereafter corrected answer and affidavits were prepared, and the present application made. The delay here presented is far less than that which has been held insufficient to defeat such an application. *Butler v. Mitchell,* 17 Wis. 52; *Robbins v. Kountz,* 44 Wis. 558, 562. It does not appear that in the interval between November and March the plaintiffs in any wise altered their situation, nor that appellant did anything to constitute an affirmance of, or acquiescence in, the judgment now attacked. Respondents urge defect in appellant's so-called "affidavit of merits," in that it alleges that she has stated "*her* case" to her attorneys instead of "*the* case." This might have been fatal, under the ruling in *Day v. Mertlock,* 87 Wis. 577, and Circuit Court Rule XIII, if affidavit of advice of counsel were necessary; but there is no necessity. A verified answer, stating a good defense, accompanied by affidavits excusing a party's neglect, satisfies all requirements of practice, under sec. 2832, Stats. 1898. *Omro v. Ward,* 19 Wis. 232; *Levy v. Goldberg,* 40 Wis. 308, 314; *Ball v. McGeoch,* 78 Wis. 355.

As to the order confirming sale under this judgment, that, too, must be reversed. The motion for such confirmation was heard at the same time with the motion to vacate the

judgment. If the court had decided the latter motion rightly at that time, and set aside the judgment, he, of course, would not have confirmed the sale. True, the appellant was given an opportunity to stay the sale by moderate bond, which she failed to give, but it cannot be held that thereby was rendered proper confirmation of the sale, in face of the necessary vacation of the judgment. Had she given such bond, plaintiffs would have proceeded, if at all, at their peril, and been entitled to no consideration because of having made the sale. In this case the sale was within their right, under an apparently valid judgment. Not until the order of confirmation was error committed. They should, of course, be reimbursed all expenses imposed upon them in making that sale. These, however, will be considered in the imposition of terms as a condition of vacating the judgment on appellant's application, but cannot render proper the subsequent order of confirmation, after all of the facts were before the court which should have prevented it.

The terms which should be imposed as condition of the relief to appellant should substantially reimburse plaintiffs the reasonable and necessary expenses incurred in entering the judgment which must be vacated. From examination of the bill of costs in the record, we find the items relevant thereto amount to about $45, exclusive of the $50 attorney's fees stipulated in the mortgage, which cannot be increased by repetition of entry of judgment. This sum ($45) should be paid, as also $10 motion costs. In addition should be paid the expenses of the sale, which are, upon legal taxation of sheriff's fees, $23.60. The sheriff's charge of $20 as fee for sale is $5 in excess of that permitted by sec. 730, subd. 33. Further, there has been paid $117.47 in discharging tax liens on the premises, of which one third inures to appellant's benefit if she sustains her defense, and should therefore be paid by her, with interest from the date of the

report of sale. The payment of all of the foregoing sums should be made a condition of vacating the judgment.

*By the Court.*— Both orders appealed from are reversed, and the cause is remanded with directions to deny plaintiffs' motion for confirmation of the sheriff's sale, and to grant motion of defendant *Emma Maud Smith* for vacation of the judgment and leave to answer, upon performance of the conditions indicated within a reasonable time, to be fixed by the circuit court.

A motion by the respondents for a rehearing was denied December 17, 1901; and on that day the mandate of this court was amended by inserting the words " as to her " after the word " judgment."