TRILLING and wife, Respondents, v. NIPPERSINK MAN-
AGEMENT CORPORATION, Appellant.

*No. 17. Argued February 28, 1972.—Decided March 28, 1972.*
(Also reported in 195 N. W. 2d 833.)

For the appellant there was a brief by *William Platt* of Genoa City, and oral argument by *Mr. Platt* and *Mr. George N. Kotsonis* of Menomonee Falls.

For the respondents there was a brief by *Lepp & Lepp,* attorneys, and *Charles A. Lepp* of counsel, all of Kenosha, and oral argument by *Nathaniel S. Lepp.*

CONNOR T. HANSEN, J.  An examination of the record reflects that on or about January 5, 1956, Nippersink Manor Resort executed certain promissory notes payable to the plaintiffs. It is alleged that Nippersink Manor Resort subsequently merged with the defendant corporation.

In our view, the significance placed upon two documents is dispositive of the material issues raised on this appeal. The first is identified as Exhibit "C," dated July 29, 1966, and reads as follows:

| "July 29, 1966<br>Mr. and Mrs. Charles Trilling<br>Genoa City, Wisconsin<br>Dear Mr. and Mrs. Trilling: | Plaintiff's<br>Exhibit<br>1<br>7-6-70   W. G. |
| --- | --- |

This letter will confirm our agreement for the liquidation of the $~~2,500.00~~ 2,537.50 balance due you on the following membership deposits:

Charles Trilling—Lee Shelly—Sam Silvers

Nippersink Management Corporation agrees to liquidate the above balance in the following manner:

| July – August | 1966—$200 and $300 (checks is-·sued) |
| June – July – August | 1967—$200 each |
| June – July – August | 1968—$200 each |
| June – July – August | 1969—$200 each |
| September | 1969—~~$200~~—Final Payment 237.50 |

It·is mutually understood that this agreement cancels the above mentioned notes and makes them null and void. In consideration for signing this agreement, Nippersink Management Corporation agrees to give free pool privileges to the family of Charles Trilling. In the event that you sell your home, then the free pool privileges would cease and the above payment schedule will still be adhered to.

At such time as the above balances are paid in full, the free pool privileges will cease. Nippersink Management Corporation has the right to prepay any or all of the above balances at any time, and at such time, pool privileges would also cease.

Please execute one copy of this agreement and return to me for my files.

NIPPERSINK MANAGEMENT CORPORATION

/s/ Mr. Charles Trilling

Mr. Charles Trilling

/s/Harry Lake

/s/Mrs. Charles Trilling

Harry Lake

Mrs. Charles Trilling

Secretary

Exhibit 'C' ''

The second is identified as Exhibit "D," dated August 9, 1966, and reads as follows:

"August 9, 1966

Plaintiff's
Exhibit
2
7–6–70   W. G.

Nippersink Management Corp.
Genoa City, Wisconsin

Re: Nippersink Manor Resort Note personally signed by the Shindermans to Mrs. Arleen

410

Niles in the amount of $875, dated January, 1956.

Attention: Harry Lake

Nippersink Manor Resort Note personally signed by the Shindermans to Samuel and Harriet Silver in the amount of $875, dated January, 1956.

Nippersink Manor Resort Note personally signed by the Shindermans to Charles and Florence Trilling in the amount of $1750, dated January, 1956.

Gentlemen:

We are representing to you that we are the owners of the above captioned notes, that said are being held by us, and in the event we should transfer these notes to any third party, we will advise you in writing.

We acknowledge that the balance due as of September 1, 1966 is $2037.50. In consideration of your affording free pool privileges to Bob and Sandra Trilling and the two children, we agree to the said obligations being interest free. However, in the event we should sell our home, then the pool privileges are to cease and the unpaid balance on the debt is to bear interest at six per cent. So long as we continue to own these notes, we will agree to the following schedule:

| July – August | 1966—$200 and $300 (checks issued) |
| June – July – August | 1967—$200 each |
| June – July – August | 1968—$200 each |
| June – July – August | 1969—$200 each |
| September | 1969—$200.50 final payment |

At such time as the balances are paid in full, the free pool privileges will cease and we will cancel the said notes. You are to have the right to prepay any or all of the above balance at any time and at such time, pool privileges would also cease.

If this agreement is in accordance with your understanding, please sign below in the space provided therefor.

Sincerely,

/s/ Charles Trilling

Charles Trilling

NIPPERSINK MANAGEMENT CORPORATION

by:

/s/ Harry Lake Vice Pres.    /s/ Florence Trilling

Harry Lake                         Florence Trilling

Exhibit 'D' ''

An affidavit of defendant's counsel, in support of the motion to vacate the judgment, includes allegations that the letter of July 29, 1966, was unknown to him until the day of the trial; that it was a complete surprise to him and was the sole reason for the stipulation of judgment.

Also, in support of such motion, defendant, by Harry Lake, one of its officers, stated by affidavit that he signed two copies of the July 29th agreement; that the plaintiffs at no time returned a copy of it to him as required therein; that plaintiffs refused both to accept the agreement and to surrender the notes; that thereafter the August 9th agreement was signed by the parties; and that the purpose of this latter agreement was only to guarantee free pool privileges and not to guarantee payment of the principal amount due.

In its decision denying defendant's motion to vacate the judgment, the trial court stated it was:

". . . unable to determine the materiality of the letter of July 29, 1966, in the light of the stipulation entered into in May of 1970 and the admissions made in Plaintiff's Exhibit 2 [letter of August 9, 1966] which is acknowledged as having been signed by the defendant corporation."

The only question on appeal is whether the trial court abused its discretion in denying defendant's motion to vacate the judgment entered upon the stipulation of the defendant.

In *Wagner v. Springaire Corp.* (1971), 50 Wis. 2d 212, 220, 184 N. W. 2d 88, this court stated the twin prerequisites that must be shown by a party seeking to vacate a default judgment: "(1) That the judgment was entered through 'mistake, inadvertence, surprise or excusable neglect,' as provided by sec. 269.46 (1), Stats., *and* (2) that the party has a meritorious defense to the action." The requisite showing can be no less when judgment is entered not by default but by stipulation of one of the parties.

Appellant's counsel contends that he was prepared to defend against the guarantee alleged in the complaint and that he was surprised by the evidence submitted on the morning of trial which posited four new causes of action. Specifically, appellant asserts that the agreement contained in the letter of July 29, 1966 (Exhibit "C"), was the sole reason for the stipulation of judgment.

In *Quinn Distributors, Inc. v. Miller* (1969), 43 Wis. 2d 291, 296, 168 N. W. 2d 552, judgment was entered by default on a cognovit note. The defendant, on motion to vacate the judgment, alleged that the note had been discharged and satisfied. The proposed answer further alleged an issue of misrepresentation as to the underlying obligation. This court held that the defendant had satisfied the statutory ground of surprise, and "[i]n recognition of the liberality extended to attempts to open judgments taken on cognovit notes," reversed the order of the trial court and opened the judgment.

The *Quinn Case* is distinguishable from the instant case in that here the defendant was at the trial and had the opportunity to defend on the note. If defense counsel was surprised at the evidence offered by the plaintiffs on the motion for summary judgment, the proper procedure would have been to seek an adjournment, *Girtz v. Oman* (1963), 21 Wis. 2d 504, 509, 124

N. W. 2d 586, or a continuance, sec. 270.145, Stats. Defense counsel concedes that this is what he should have done but admits he made a mistake and argues that a liberal construction of sec. 269.46 (1) should allow him relief.

Appellant's mistake allegedly involved both a mistake of fact and a mistake of law. First, it is alleged he was unaware at the time of the trial that the agreement of July 29, 1966, had never been accepted by the plaintiffs and had been voided by his client. Secondly, it is alleged that defense counsel was unaware of the legal implications of the two documents in that the agreement of July 29th was a direct or new obligation which called for the cancellation of the notes, whereas the agreement of August 9th was an assumption to pay the existing obligation as evidenced by the original notes.

While sec. 269.46 (1), Stats., applies both to a mistake of fact or a mistake of law, *Paschong v. Hollenbeck* (1961), 13 Wis. 2d 415, 108 N. W. 2d 668, and *Cruis Along Boats, Inc. v. Standard Steel Products Mfg. Co.* (1964), 22 Wis. 2d 403, 126 N. W. 2d 85, make it clear that not every mistake is sufficient per se to entitle a moving party to relief. In *Schmidt v. Schmidt* (1968), 40 Wis. 2d 649, 654, 162 N. W. 2d 618, this court stated:

". . . The discretion of the trial court to relieve parties from stipulations when improvident or induced by fraud, misunderstanding or mistake, or rendered inequitable by the development of a new situation, is a legal discretion to be exercised in the promotion of justice and equity, and there must be a plain case of fraud, misunderstanding or mistake to justify relief. *Illinois Steel Co. v. Warras* (1909), 141 Wis. 119, 123 N. W. 656."

In the instant case, the trial court implicitly held that the surprise or mistake generated by the agreement of July 29th was insufficient to entitle the appellant to relief for that agreement was immaterial in view of the stipulation and the agreement of August 9th.

Defendant maintains that the agreement of August 9th is ambiguous on its face and does not constitute a guarantee or assumption of the principal amount due plaintiff. We do not agree. The agreement acknowledges a balance due of $2,037.50, sets conditions as to when interest shall be waived, conditions when interest shall be paid and the amount thereof, a schedule of payment of the obligation, and provides that free pool privileges shall cease when the obligation is paid in full. The agreement definitely relates both to the payment of interest and principal.

The letters of July 29th and August 9th both relate to the same obligation. The first letter, which the defendant claims was never finalized into an agreement, concerns the cancellation of the notes and the assumption of the debt by the defendant. The second letter relates to an outright guarantee of the notes by the defendant.

We would agree with the trial court that the letter of July 29th is not material when considering the admissions and agreements contained in the letter of August 9th and defendant's stipulation to the entry of judgment. The trial court did not abuse its legal discretion.

We have considered other issues presented by the defendant and are of the opinion they do not constitute grounds for reversal.

*By the Court.*—Order affirmed.