HANSHER, d/b/a Northern Motors, Respondent, v. KAISHIAN, d/b/a Kaishian Auto Sales, Appellant.

*No. 75–363. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 564.)

376

For the appellant the cause was submitted on the brief of *Brady, Pachefsky & Sullivan*, attorneys, and *Jerome F. Pogodzinski*, of counsel, all of Milwaukee.

For the respondent the cause was submitted on the brief of *Emanuel N. Rotter* of Milwaukee.

ABRAHAMSON, J. Defendant Mike Kaishian appeals from an order of the county court denying his motion to vacate a default judgment taken against him by plaintiff Lester Hansher. Both parties are engaged in the used car business in Milwaukee.

There are two issues on this appeal:

1. Did Kaishian's unsigned letter to plaintiff's counsel constitute an answer to a complaint?

2. Did the trial court abuse its discretion in denying Kaishian's motion to vacate the default judgment?

## FACTS

The action in which the default judgment was rendered was commenced on December 5, 1974 by personal service of a summons and verified complaint. The complaint alleged that on or about June 25, 1974, Kaishian acquired, as a trade-in from a third party, a 1967 Cadillac which had been sold to the third party by plaintiff Hansher, doing business as Northern Motors. The sale had been made pursuant to an installment contract by which the buyer granted to Northern Motors a security interest to secure payment of the balance due on the price of the car. The unpaid balance under the contract was alleged to be $385.19. The complaint alleged in substance that the security interest created by the buyer was perfected by Northern Motors and that Kaishian had actual or con-

structive notice thereof, but that Kaishian, on or about July 18, 1974, sold the automobile to another person "free and clear of all liens and security interest" without disclosing Northern Motors' perfected security interest.

On the basis of these factual allegations, the complaint alleged a cause of action under sec. 218.01(9), Stats., which creates for the benefit of a motor vehicle dealer licensee an action for treble damages against another licensee.

Sec. 218.01(9), Stats., provides:

"(9) CIVIL DAMAGES. Any licensee suffering pecuniary loss because of a violation by any other licensee of sub. (3) (a) 4, 11, 15, 16, 17, 23 or 24 or because of any unfair practice found by the licensor under sub. (5) (a), may recover damages therefor in any court of competent jurisdiction in an amount equal to 3 times the pecuniary loss together with costs including a reasonable attorney's fee." [1]

Kaishian sent by certified mail an unsigned letter, dated December 5, 1974 (the same date upon which the summons and complaint had been served) to Mr. E. N. Rotter, the person named in the summons as attorney for Northern Motors. The text of Kaishian's letter, in its entirety, is set forth in the margin. [2]

---

[1] Hansher's complaint alleged that Kaishian's conduct violated sec. 218.01(3)(a)11, which penalizes a licensee "[h]aving indulged in any unconscionable practice relating to said business."

[2] "When Wayne Miller traded this car in he had no title. The car was towed in, the front end had dropped off and ruined the A-Frame. I called the Motor Vehicle Department at Madison and they showed the car in another person's name, Wayne Miller said he bought the car from Northern Motors. I called Northern Motors assuming they had financed the car, I told the man we had the car on a tow-truck, would he like it towed there. The man remembered the car well and stated they had just put a transmission in it, he did not want the car and had not financed it, he stated General Finance had financed the car and had a lien on it. I asked him if the title had been sent to Madison in Wayne

Without further communication between the parties, Northern Motors, by Attorney Rotter, applied for a default judgment, the matter being heard before the county court on January 6, 1975. No transcript of the default

Miller's name, he replied yes, it had been properly transferred. I repeated to him are you sure you have no lien on the car, he said only General Finance has a lien, I asked him again do you want the car for any reason since the tow-truck had not dropped it off as yet, he replied no, you must clear it with General Finance. General Finance was called and okayed putting a lien on the car he was buying and released the lien off the Cadillac. I gave our contract to Wayne Miller, he took it to General Finance and brought back the lien documents to be used on the new car he was purchasing. I properly transferred the General Finance lien on the new car he purchased.

"I then repaired this disabled Cadillac, at considerable expense, and sold it for $650.00 to Faithe Harris. The car was sold in good faith on the word of Northern Motors that the only lienholder was General Finance. We also repaired the car on the good faith we had in the word of Northern Motors.

"Michael Kaishian

"President, Kaishian Auto Inc."

For the first time on appeal Kaishian raises in his brief the issue that the wrong defendant was sued; the proper party was Kaishian Auto Inc. Kaishian suggests in his brief that the letter "was advising counsel for the plaintiff that the plaintiff had the wrong party." This argument proceeds on the theory that because the letter referred to Kaishian as "President, Kaishian Auto Inc." it should be taken as alleging by inference that Kaishian was not personally liable under sec. 218.01(9), Stats., because "obviously the licensee is not the individual, but the corporation." This is rather a strained inference to be drawn from no more than the style of the letter's closing. Nowhere is it directly stated in the brief that the corporation was the licensee or that Kaishian is not licensed as a salesman employed by the corporation (sec. 218.01(1)(c)), or that a salesman licensee is not liable under sec. 218.01(9), Stats. Nor does anything in the record show that Kaishian was not a licensee within the meaning of sec. 218.01(9). We shall not consider this issue raised thus for the first time on appeal. *Terpstra v. Soiltest, Inc.*, 63 Wis.2d 585, 593, 218 N.W.2d 129, 133 (1974).

judgment proceedings is in the record. However, the record does contain an affidavit of the court reporter stating that she had recorded the presentation of Attorney Rotter at the default judgment hearing, that Kaishian's letter of December 5, 1974 had been introduced in evidence, and that the contents of the letter were summarized for the court. Findings of fact and conclusions of law corresponding to the allegations in the complaint were rendered on January 13, 1975, and on January 14, 1975, judgment was entered in favor of Northern Motors in the amount of $1,427.17, which was treble the pecuniary loss of $385.19 together with $250 attorney's fees and $21.60 for disbursements.

Upon being apprised of the judgment, Kaishian retained counsel. On February 3, 1975 he obtained an order to show cause why the judgment should not be vacated so as to allow him to file an answer. A proposed answer was filed,[3] and affidavits by Kaishian were submitted to the court. The substance of the affidavits was that Kaishian was unfamiliar with court procedure, that he had no previous experience with summons and complaints, that he did not know the significance of a summons, and that he thought his letter would serve as an answer to the complaint.

A hearing was held, and Kaishian's testimony revealed that he had been involved in business for twenty years, and in the used car business for fifteen years; that he owned a tire dealership; that he possessed a degree in sociology from the University of Wisconsin-Milwaukee;

[3] Kaishian's proposed answer denied all material allegations in the complaint and further alleged as follows:

"As and for a further answer to the complaint filed herein, the Defendant respectfully advises the Court that prior to the sale of the vehicle involved the answering defendant did check with Northern Motors and was advised by them in good faith that there was no lien on the said vehicle and based on that information did proceed to acquire the vehicle and resell same."

that he owned several parcels of real estate, including rental properties, and that he was familiar with the methods of securing payment of the price of automobiles and with the laws relating thereto.

At the request of Northern Motors, the trial court took judicial notice of court records relating to a lawsuit in the spring or summer of 1971 in which Kaishian had also been the defendant. Those records are not in the record before this court, but from the comments of the trial court, it appears that in 1971 Kaishian had responded to a summons and complaint served upon him by sending a certified or registered letter to the attorney named in the summons. A default judgment was entered which Kaishian moved to vacate, submitting affidavits to the effect that he assumed his letter would stand as an answer and he thought it was a responsive pleading. Apparently the judgment was vacated in that instance, and the matter settled out of court.

Kaishian was cross-examined concerning the earlier suit and admitted remembering that he had been served with process, but claimed not to remember that a judgment had been entered against him or that he had signed an affidavit for the purpose of having it reopened. With respect to the letter written in that case, he testified, "I wrote it about three weeks after I got [the summons and complaint] and they said I wrote it too late."

At the close of the hearing the trial court ruled from the bench that it would deny Kaishian's motion to vacate the judgment. The court felt that a meritorious defense had been pleaded in the proposed answer, referring to the allegation that someone at Northern Motors had told Kaishian it had no lien on the car as possibly giving rise to "some sort of estoppel." However, the court found that Kaishian's failure to answer was not excusable in view of his experience in the 1971 case and his general sophistication, education and experience in business. The court

found the statements of lack of understanding and experience contained in Kaishian's affidavits to be untrue, and the court concluded that Kaishian "could not . . . possibly think his letter would serve as a meritorious or proposed answer on his behalf." On March 26, 1975 the court entered its order denying the motion to vacate "for the reason that the defendant has failed to establish that said judgment was rendered through his mistake, or inadvertence, or surprise, or excusable neglect." Kaishian has appealed.

## THE LETTER AS AN ANSWER

The default judgment herein was rendered pursuant to sec. 270.62, Stats. 1973, which provided in pertinent part:

"270.62 Default judgment. (1) NATURE OF DEFAULT. A default judgment may be entered as provided in this section if no issue of law or fact has been joined and if the time for joining issue has expired.

"(2) GENERAL. Upon filing with the court the summons and complaint and proof of service of the summons on one or more of the defendants and an affidavit that the defendant is in default according to subsection (1), the plaintiff may apply to the court for judgment according to the demand of the complaint. If taking an account or the proof of any fact is necessary to enable the court to give judgment, a reference may be ordered to take such account or proof and to report the same to the court, and such reference may be executed anywhere in the state; or the court may take the accounts or hear the proof. The court may order damages to be assessed by a jury. If the defendant has appeared in the action, he shall be entitled to notice of the application for judgment."

No notice of application for the default judgment was given.

Kaishian's first contention is that his letter of December 5, 1974 was in fact an answer to the complaint, that

issue was joined, and that the trial court therefore lacked jurisdiction to enter a default judgment without first having entertained and granted a motion to strike the answer. *Reynolds v. Taylor*, 60 Wis.2d 178, 208 N.W.2d 305 (1973). As previously noted, the trial court had the letter before it when the default judgment was granted.

Under then-applicable statutes, all pleadings were required to be "subscribed by the party or his attorney," sec. 263.23, Stats. 1973, and every pleading except a demurrer was required to be verified. Sec. 263.24, Stats. 1973. Sec. 269.33, Stats. 1973, required that the papers in any action or proceeding have endorsed thereon the title of the action. Kaishian's letter was neither subscribed nor verified, nor did it refer to the pending action or indicate that it related to any judicial proceeding. Nor did the letter comply with sec. 263.13, which prescribes the contents of an answer.[4] The letter did contain Kaishian's explanation of the events in question and his assertion that an unidentified individual at Northern Motors told him Northern Motors had no lien on the automobile. However, no denial or comment on the allegations in the complaint was made. Under sec. 263.26, the effect of the December 5th letter as an answer at best would have been to admit all allegations in the complaint and to set up a possible affirmative defense in the nature of an estoppel. It does not appear that Kaishian intended to admit the allegations in the complaint, for his proposed answer denied all allegations save those identifying the parties.

The absence of signature and title from an otherwise acceptable answer would probably constitute defects of

---

[4] "263.13 Answer, contents. The answer of the defendant must contain:

"(1) A specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief.

"(2) A statement of any new matter constituting a defense, in ordinary and concise language, without repetition.

"(3) The address of the defendant."

form rather than substance. They would be curable by amendment and would not as a general matter permit a plaintiff to take a default judgment without notice.[5] Regarding the absence of verification, sec. 263.24, Stats. 1973, provides in part:

"Where service is made either pursuant to ch. 262 or otherwise, no defect or irregularity in a verification shall defeat the jurisdiction of the court but shall be ground for a timely motion to strike the pleading unless amended."

The appropriate remedy for a defective verification of a pleading is to move to strike the pleading or perhaps to seasonably return it to the pleader. The objection may be waived if not timely raised. *G. M. C. Hotels, Inc. v. Hanson,* 234 Wis. 164, 169, 290 N.W. 615 (1940) ; *Feldmeier v. Springfield F. & M. Ins. Co.,* 171 Wis. 377, 380, 177 N.W. 583 (1920) ; *Kirby v. Corning,* 54 Wis. 599, 601, 12 N.W. 69 (1882). However, these cases all involved documents which clearly were intended to be and were in fact pleadings. They dealt with the problem of remedies for defects in verification of a pleading; they did not speak to the question of whether the document was a pleading in the first instance.

---

[5] Sec. 269.43, Stats. 1973, provided in part:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party . . . ."

We do not intend to be critical in any way of counsel for Northern Motors. However, we believe that if, after a summons and complaint are served, plaintiff's counsel receives from the defendant a communication such as Kaishian's which is not an answer but which relates to the subject matter of the suit, counsel would be well advised promptly to return the original of the communication to the defendant, inform him that plaintiff's counsel cannot represent or advise the defendant, and inform him in the language of the summons of the possibility of a default judgment being taken. *See Cooper v. Hall,* 489 S.W.2d 414, 416 (Tev. Civ. App. 1972).

The letter cannot be deemed an answer to the complaint. The complete absence of any indicia of a legal pleading is more than a matter of mere form in this case, though the individual omissions viewed in isolation might be so characterized. The letter written by Kaishian in the instant case is no more than a business letter. It in no way purports to be an answer to the plaintiff's complaint. It was an answer in a colloquial sense to an inquiry into the nature of the transaction in question, but it was not a proper legal response to the plaintiff's complaint, no matter how forgivingly and generously construed.

The purpose of pleadings is to notify the opposing party of the pleader's position in the case and to frame the issues to be resolved in the action for the benefit of the litigants and the court. *Knapke v. Grain Dealers Mut. Ins. Co.*, 54 Wis.2d 525, 533, 196 N.W.2d 737 (1972); *Schneck v. Mut. Service Cas. Ins. Co.*, 18 Wis.2d 566, 572, 119 N.W.2d 342 (1963). The pleading is to define the pleader's position *in the pending litigation.* If a document is to be treated as a pleading, it must evidence to the recipient that it is intended to speak to the controversy in the judicial forum. It is unreasonable to expect either a plaintiff or a court to treat that which on its face is no more than a business letter as a legal pleading, even where the letter is written to an attorney.

Kaishian's letter should be compared to a letter by a defendant to plaintiff's attorney in response to a summons and complaint described in *Lyons v. Paul,* 321 S.W.2d 944 (Tex. Civ. App. 1959). That letter stated it was in reply to the attorney's "greeting dayted August 6, 1956." The writer "inclosed some copys for you [the attorney] to look over if you need further proof." The writer closed saying "do hope this is what you·wants to no." Although the Texas court did not specifically find that the letter

constituted an answer, the court noted that the letter put the attorney on notice that the defendant (appellant) intended the letter to be an answer and that the attorney was obligated to advise the court of the letter. (In the case at bar, counsel for Northern Motors did so advise the court.) The Texas court noted:

"[The appellant's letter] apprised him of the fact that appellant was uneducated and that she was under a mistaken belief that her answer was sufficient and the place where it should be filed . . . . Under the foregoing conditions, appellees' attorney moved for default judgment while in possession of a written instrument, with enclosures attached, that he should have known that appellant considered as her answer and her defense to the cause of action. In so doing he at least impliedly represented to the court that appellant did not intend to defend the suit and that she had not answered and to this extent misled the court. See 7 C.J.S. Attorney and Client sec. 23, p. 741." *Lyons v. Paul,* 321 S.W.2d 944, 949, 950.

Kaishian may have hoped by this letter to settle the controversy or to induce the plaintiff to abandon the suit. However, these expectations were not fulfilled. The letter did not reveal Kaishian to be an uneducated person, nor did it indicate that Kaishian considered it his answer and defense.[6] The letter did not constitute a colorable answer to the complaint such as would have prevented a default judgment from being entered until the "answer" was stricken on motion of the plaintiff.

The remaining issue in this case is whether the trial court properly declined to relieve Kaishian from the

[6] Pleading may be very different than the assertions that may be made in other communication, oral or written, between parties in disagreement on a matter. Ill-informed, biased or unprovable statements may be made informally that would not be made in a lawsuit where the parties know that substantiation must be forthcoming.

judgment. Before reaching that issue, however, we note in passing that while Kaishian's letter was neither an answer nor an appearance[7] in the action, it does not follow that the letter was wholly immaterial to the proceeding in which the default judgment was granted. Sec. 270.62, Stats. 1973 provides that a default "may" be entered if the requisite circumstances exist. The word "may" means the court is not required to enter a default judgment. Kaishian's failure to join issue did not automatically entitle Northern Motors, as a matter of right, to a default judgment; rather the question of

---

[7] In two cases this court has held that a letter written by a party in receipt of a summons by which the party demanded of plaintiff's counsel a copy of the complaint (which had not been served with the summons) was sufficient to waive objections to personal jurisdiction and confer personal jurisdiction upon the Wisconsin court. *Graves v. Nutting Truck & Caster Co.*, 76 Wis.2d 165, 251 N.W.2d 193 (1977); *Milwaukee County v. Schmidt, Garden & Erikson*, 35 Wis.2d 33, 150 N.W.2d 354 (1967). Presumably the letters in those cases constituted appearances such as to require notice of application for a default judgment under sec. 270.62, Stats. 1973. However, the letters in both cases expressly referred to the summons, acknowledging receipt thereof, and expressly demanded a copy of the complaint in compliance with the summons. This court concluded in each case that the letter indicated the defendant "considered it was actively participating in the case." In the instant case Kaishian's letter avoided any reference to the existence of a lawsuit or the service of a summons and complaint. It requested no action on the part of either the plaintiff or the court. The letter does not reflect that Kaishian considered himself a participant in the case, and therefore in our opinion the letter did not constitute an appearance within the meaning of the last sentence, sec. 270.62(1), Stats. 1973. Notice of application for the default judgment was therefore not required.

This court has held that the failure to give notice of application for judgment when required by sec. 270.62(2), Stats., does not render the judgment void; the lack of notice is viewed as a nonjurisdictional irregularity. *Glassner v. Medical Realty, Inc.*, 22 Wis.2d 344, 349, 350, 126 N.W.2d 68 (1964).

whether the judgment should be granted was a matter for the exercise of the trial court's discretion.[8] *Reynolds v. Taylor,* 60 Wis.2d 178, 208 N.W.2d 305 (1973); *Production Credit Ass'n v. Goede,* 50 Wis.2d 509, 513, 514, 184 N.W.2d 830 (1971); *Willing v. Porter,* 266 Wis. 428, 429, 430, 63 N.W.2d 729 (1954).

Where plaintiff's counsel informs the court—as counsel of course should do—that he has received a letter such as Kaishian's, the court should question counsel closely on the matter, with an eye to determining whether notice of entry of application for the default judgment should be given. The trial court has discretion to require such notice even though such notice may not be required by the statute.

## MOTION TO VACATE THE DEFAULT JUDGMENT

Kaishian's motion to vacate the judgment was governed by sec. 269.46(1), Stats. 1973:

"269.46 Relief from judgments, orders and stipulations; review of judgments and orders. (1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an omission in any proceeding. In addition to the required affidavits,

---

[8] The statute which governed the instant case, sec. 270.62, Stats. 1973, was repealed by order of this court effective January 1, 1976. However, what we have said will apply under new Rules of Civil Procedure as well. Sec. 806.02(1), Wis. Rules of Civ. Proc., provides:

"A default judgment may be rendered as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment."

all motions to vacate a judgment entered upon default or cognovit and to obtain a trial upon the merits shall be accompanied by a proposed verified answer disclosing a defense."

It has been repeatedly stated that this statute confers a wide discretion upon trial courts which will not be disturbed on appeal except in the case of clear abuse. *Buchen v. Wisconsin Tobacco Co.*, 59 Wis.2d 461, 465, 208 N.W.2d 373 (1973); *Collings v. Phillips*, 54 Wis.2d 204, 210, 194 N.W.2d 677 (1972); *Wagner v. Springaire Corp.*, 50 Wis.2d 212, 219, 184 N.W.2d 88 (1971). Before a party may be entitled to relief, two distinct requirements must be met: First, a showing must be made that the judgment or order from which relief is sought was the product of mistake, inadvertence, surprise or excusable neglect on the part of the moving party. Second, it must be shown that a meritorious defense to the action exists. *Wagner v. Springaire Corp., supra*, 50 Wis.2d at 220; *Bloor v. Smith*, 112 Wis. 340, 346, 87 N.W. 870 (1901).

In this case the trial court found that the answer submitted by Kaishian disclosed a meritorious defense in the nature of an estoppel, and this finding is not in dispute. The question is whether the trial court abused its discretion in concluding that no mistake, inadvertence, surprise or excusable neglect were shown. The burden was upon Kaishian to show that one of the requisite conditions existed. *Padek v. Thornton*, 3 Wis.2d 334, 338, 88 N.W.2d 316 (1958).

The fact that Kaishian had made some contact with the attorney for the plaintiff, while perhaps relevant as to excusable neglect, did not require the conclusion that relief should be granted. In *Glassner v. Medical Realty Inc.*, 22 Wis.2d 344, 126 N.W.2d 68 (1964), this

court affirmed denial of a motion to vacate a judgment notwithstanding the fact that negotiations between the parties were going on concerning the matter at the time, where it did not appear that the plaintiffs had induced the defendant's default. In *Williams v. Miles,* 268 Wis. 632, 68 N.W.2d 451 (1955), it was held not an abuse of discretion for the trial court to refuse to reopen a judgment where the defendant alleged in her affidavits that she had called upon the plaintiff's attorney and "objected to the action," and that she had believed this was sufficient.

Kaishian's argument in this court purports not to dispute the trial court's finding that no inadvertence or excusable neglect as contemplated by the statute were demonstrated. Rather, he argues that relief should have been granted on the theory that Kaishian's default was due to a mistake of law—the mistake of law being that he believed that his letter of December 5, 1974 would suffice as an answer to the complaint.

In *Paschong v. Hollenbeck,* 13 Wis.2d 415, 422, 108 N.W.2d 668 (1961), this court relaxed the position taken in several earlier cases which purported to limit the mistakes that might justify relief under the statute to mistakes of fact. In *Paschong* the court held that relief was not precluded by the fact that a party's mistake was one of law and that the nature of a mistake of law might properly be considered together with other facts of the case in passing on the motion. However, not every mistake, be it of fact or of law, is sufficient to require that relief be granted. The matter remains one for the discretion of the court. *Trilling v. Nippersink Management Corp.,* 54 Wis.2d 406, 413, 195 N.W.2d 833 (1972).

The statute speaks of "mistake, inadvertence, surprise or excusable neglect." Only the word "neglect" is ex-

pressly qualified by the adjective "excusable." However, the decisions of this court under the statute reflect quite clearly that whichever of the enumerated grounds are relied upon in a particular case, the primary question is whether the conduct of the moving party was excusable under the circumstances. In *Padek v. Thornton, supra,* 3 Wis.2d at 338, it was said that "the cases indicate that the phrase 'excusable neglect' is taken as embodying the meaning of mistake, inadvertence, and surprise." Indeed, if it were not generally required that the moving party's conduct be excusable under the circumstances, default judgments could be vacated or reopened for the asking, since nearly any pattern of conduct resulting in default could alternatively be cast as due to mistake or inadvertence or neglect.

In *Wagner v. Springaire, supra,* 50 Wis.2d at 217, this court defined "excusable neglect" in the following terms:

" 'Excusable neglect' is that neglect which might have been the act of a reasonably prudent person under the circumstances."

While the court was speaking of the use of the phrase in sec. 269.45(2), Stats., relating to extension of the time to file an answer, it is apparent that the same definition was considered appropriate with respect to sec. 269.46 as well. *Id.,* at 219, 220. A reasonable degree of prudence should be required whichever of the statutory grounds are relied upon to justify relief.

The record indicates that the trial court was aware of the scope of its discretion and that it applied the standards for the exercise of discretion announced in this court's decisions. It had before it a college-educated man with twenty years in business who had previously undergone an experience with a default judgment almost identical to his experience in the instant case. The trial

court was entitled to consider Kaishian's age, education and experience on the question. The court considered and rejected the protestations of unfamiliarity with court proceedings contained in Kaishian's affidavits, as well as his explanation that he believed the only reason his letter had not sufficed as an answer in the earlier proceeding was the fact that he wrote it too late. In connection with vacating the earlier default judgment Kaishian had signed affidavits similar to those submitted here and had verified a proposed answer. The trial court found that in this case Kaishian "could not possibly" have believed his letter to have been a proper answer to the complaint. This was implicitly a finding that Kaishian's mistake was unreasonable and inexcusable under the circumstances.

As Northern Motors points out in its brief, Kaishian's most potent argument here is that he acted promptly to vacate the judgment once he learned of its existence. The judgment was entered on January 14, 1975 and the order to show cause why it should not be set aside was issued on February 3, 1975. Promptness of action to seek relief is a material factor bearing on whether relief should be granted. *Collings v. Phillips, supra,* 54 Wis.2d at 210. However, promptness does not of itself require an affirmative result; the matter remains in the trial court's discretion, to be exercised upon the totality of the circumstances. *Cruis Along Boats, Inc. v. Standard Steel Products Mfg. Co.,* 22 Wis.2d 403, 410, 126 N.W.2d 85 (1964).

We conclude that the trial court did not abuse its discretion in denying relief in the case at bar.

Northern Motors has requested that this court impose additional or double costs. The court in its discretion has determined not to do so.

*By the Court.*—Order affirmed.