Ronald P. HLAVINKA, Plaintiff-Appellant-Cross Respondent,†

v.

BLUNT, ELLIS & LOEWI, INC., John Fromm and Peter Pfeffer, Defendants-Respondents-Cross Appellants.

Court of Appeals

*No. 91-2085. Oral argument December 1, 1992.—Decided February 2, 1993.*

(Also reported in 497 N.W.2d 756.)

†Petition to review denied.

384

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *Paul R. Erickson* and *Scott M. Benson* of *Gutglass, Erickson & Bonville, S.C.,* of Milwaukee. Oral argument by *Colleen Fleming.*

On behalf of the defendants-respondents-cross appellants, the cause was submitted on the briefs of *Thomas P. Ward* of *McBride, Baker & Coles* of Chicago and *David L. Uelmen* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* of Milwaukee. Oral argument by *Thomas P. Ward.*

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.  Ronald P. Hlavinka brought this action against Blunt, Ellis & Loewi, John Fromm, and Peter Pfeffer, seeking compensatory and punitive damages for losses Hlavinka sustained in trading silver futures. His amended complaint asserted negligence and breach-of-contract claims. The trial court dismissed the action because, as recited in the order of dismissal, Hlavinka "failed to meet his burden of advancing this case for trial." Hlavinka appeals. Blunt, Ellis & Loewi, Fromm and Pfeffer cross-appeal from an earlier order by the

385

trial court denying their motion for summary judgment. We reverse both the order dismissing the action for lack of prosecution and the order denying the defendants' motion for summary judgment.

## I.

Fromm and Pfeffer are employees of Blunt, Ellis & Loewi. Blunt, Ellis & Loewi is a commodity futures commission merchant through which Hlavinka traded the silver futures at issue on this appeal: a silver contract purchased by Hlavinka on February 18, 1983, and a silver contract purchased for his account by Hlavinka's wife, Mary Hlavinka, on February 23, 1983. The silver futures' market declined sharply and Hlavinka lost $35,184.60 by the time he was able to sell the contracts several days later on March 1 and 2, 1983.[1]

Claiming that his losses were the defendants' fault, Hlavinka brought a reparations action before the Commodity Futures Trading Commission against Blunt, Ellis & Loewi, Fromm, and Pfeffer under the anti-fraud provision of the Commodity Exchange Act.[2] The main thrust of Hlavinka's *pro se* complaint was that Fromm,

---

[1] "A commodity future contract is no more or less than an option; the purchaser agrees to take delivery, or the seller agrees to make delivery, of a specified quantity of a specified commodity at a specified future time at a specified price. Unless the investor reverses his position timely by selling what he has bought or buying what he has sold, he must accept delivery of the commodity and pay the full purchase price as set by the contract (or deliver the commodity against the full payment, if he has sold)." *Moody v. Bache & Co.*, 570 F.2d 523, 526 (5th Cir. 1978). For a history of the futures markets, see *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 357-360 (1982).

[2] Section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b, provides, in pertinent part:

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) to cheat or defraud or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or . . . .

Section 14(a) of the Commodity Exchange Act, 7 U.S.C. § 18 (a), provides:

Any person complaining of any violation of any provision of this chapter, or any rule, regulation, or order issued pursuant to this chapter, by any person who is registered under this chapter may, at any time within two years after the cause of action accrues, apply to the Commission for an order awarding actual damages proximately caused by such violation.

As an alternative to a reparations action under section 14(a) of the Act, a person claiming injury as the result of a violation of the Act may pursue court action. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 384 (1982) (reparation procedures provided for by section 14, as part of 1974 amendments to the Act, were intended to supplement, not supplant, the implied judicial remedy).

387

a commodities broker with Blunt, Ellis & Loewi, and the person through whom Hlavinka had purchased the silver contracts, did not properly advise him that, under certain market conditions, the normal fifty-cent limit in the permitted one-day decline in the price of silver would be expanded to either seventy-five cents or one dollar. This information was important, Hlavinka contended, because trading in the metal would, in effect, be suspended if the price dropped to its limit, and traders would be unable to liquidate their positions. More specifically, Hlavinka's complaint before the Commission alleged the following instances of Blunt, Ellis & Loewi's "[m]ismanagement of [Hlavinka's commodity-trading] [a]ccount":

- Fromm did not tell him the expanded limit was in effect on February 24, 1983;

- Fromm did not arrange for Hlavinka to sell the contracts "even at a discount" because, unlike a customer whose contracts Blunt, Ellis & Loewi did sell, Hlavinka had enough money with the firm to cover his losses so that Blunt, Ellis & Loewi had "no worry" about being stuck with the loss;

- Pfeffer, who was in charge of the commodities division at Blunt, Ellis & Loewi, failed to properly supervise the firm's commodity-trading activities;

- a television quote-screen in Fromm's office from which Hlavinka alleged he could have obtained essential moment to moment facts on market conditions was deliberately kept non-functioning because, as he alleged Fromm told him, "[i]t's too expensive to operate."

A hearing before a Commodity Futures Trading Commission administrative law judge was held on Hlavinka's complaint. In the opening paragraphs of his written submission, Hlavinka characterized the defendants' alleged fraud as follows:

> Blunt, Ellis & Loewi, John Fromm and Peter Pfeffer's gross negligence in the performance of their duties as licensed commodity brokers, caused me great financial harm. They have caused this harm to linger on for 3½ years because of their untruthfulness.
>
> The respondents [*sic*] failure to use a degree of care and caution that their professional calling requires caused me injury.
>
> They failed to furnish me with correct trading information on February 23, 1983. Had I been informed that on February 24, 1983, the limit would be expanded to .75 cents my wife would never have purchased a silver contract upon the advice of John Fromm and his charts on February 23, 1983.
>
> They failed to furnish me with correct trading information on February 24, 1983. Had I been informed that the limit was expanded to .75 cents, I would have sold the silver contracts.
>
> The respondents gave me FALSE information on February 25, 1983, in an attempt to conceal their negligence in the performance of their duties as licensed commodity brokers.

(Spacing and uppercase as in original.) He also argued that Blunt, Ellis & Loewi should have told him of an alternate, albeit costly, method of liquidating a commodities position about which Hlavinka apparently first learned during the trial-type hearing before the administrative law judge.

On October 22, 1986, the administrative law judge issued the Commission's initial decision, *Hlavinka v.*

389

*Blunt, Ellis & Loewi, Inc.*, Comm. Fut. L. Rep. (CCH) ¶ 23,324 (1986), which was subsequently affirmed by the Commission without opinion, *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, Comm. Fut. L. Rep. (CCH) ¶ 23,906 (1987). The decision found as fact that:

- Hlavinka would not have been "deterred from entering the [commodity futures] market" had he known that the price-drop limit would be expanded under certain conditions;
- Hlavinka was informed of the expansion of the price-drop limit in silver on February 25, 1983, which was "the day it occurred"; an order by Hlavinka to sell a silver contract was transmitted to Blunt, Ellis & Loewi by Hlavinka at a time when trading had already been suspended for the day, and, therefore, neither Blunt, Ellis & Loewi nor Fromm or Pfeffer were "responsible for its non-execution";
- Hlavinka would not have used the alternate and costly method of liquidating his contracts since, "[i]t is evident that [Hlavinka] was not determined to close his positions at all costs, as he now maintains";[3]
- Hlavinka did not establish any connection between the non-working television monitor in the Blunt, Ellis & Loewi office and his losses.

The Commission thus found that there was no causal connection between any acts of the defendants, as alleged by Hlavinka, and Hlavinka's losses.

---

[3] Hlavinka testified at the hearing before the administrative law judge that he could have sold the second silver contract when the first contract was successfully sold but that he did not because he was "hoping for a correction" in the market.

Hlavinka appealed the Commission's decision to the United States Court of Appeals for the Seventh Circuit, which, on February 6, 1989, affirmed.[4] *Hlavinka v. Commodity Futures Trading Comm'n*, 867 F.2d 1029 (7th Cir. 1989), *cert. denied*, 111 S. Ct. 51. On February 22, 1989, Hlavinka commenced the present action, alleging negligence and breach of contract. Subsequently, the defendants simultaneously filed in the circuit court a motion to dismiss and, in the United States District Court for the Eastern District of Wisconsin, a petition to permanently enjoin Hlavinka's state-court action.[5] The defendants argued that Hlavinka's state-court complaint was barred by the principles of *res judicata* and collateral estoppel. On the defendants' motion, the circuit court stayed the state proceedings pending resolution of the matter in federal court.

Ultimately, both the United States district court and the United States court of appeals declined to enjoin Hlavinka from pursuing his state-court action for negligence and breach of contract. *Blunt, Ellis & Loewi, Inc. v. Hlavinka*, 711 F. Supp. 950, 952 (E.D.Wis. 1989), *aff'd*, 896 F.2d 240, 241 (7th Cir. 1990). On May 13, 1990, Hlavinka filed an amended complaint in this action.

---

[4] Section 14(e) of the Commodities Exchange Act, 7 U.S.C. § 18(e), provides, as material, that: "Any order of the Commission entered hereunder shall be reviewable on petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in which a hearing was held."

[5] The defendants' federal-court petition was predicated on 28 U.S.C. § 2283, the Anti-Injunction Act, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Blunt, Ellis & Loewi, Fromm, and Pfeffer filed a motion for summary judgment seeking dismissal of Hlavinka's amended complaint. They asserted that the doctrine of collateral estoppel prevented Hlavinka from relitigating the same facts on which he lost in the reparations proceeding before the Commodity Futures Trading Commission. On January 3, 1991, the trial court denied the defendants' motion. Five months later, on June 5, 1991, the trial court dismissed Hlavinka's action for his failure to prosecute the case.

## II.

A.   *Dismissal for failure to prosecute.*

A trial court's dismissal of a civil litigant's action for either the violation of a court order or for failure to prosecute is a matter that is, appropriately, largely left within the trial court's discretion. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859, 863 (1991). "Exercise of discretion," however, is not license for mere "unfettered decision-making." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Rather, an appropriate exercise of discretion requires the application of correct legal principles to the facts of record. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982). As a reviewing tribunal, we must determine whether the facts and law support the trial court's action. *Ibid.*

After significant delays resulting from the defendants' excursion into federal court in their unsuccessful attempt to invoke the Anti-Injunction Act, 28 U.S.C. § 2283, to enjoin Hlavinka's state-court action, the trial court issued a scheduling order pursuant to Rules 802.10(3)(b) and 802.11, Stats., on October 16, 1990. The

order set February 11, 1991, as the date for trial. On February 7, 1991, Hlavinka's attorney filed a motion to withdraw as counsel, and for an adjournment of the trial date in order to permit Hlavinka to retain new counsel. The motion alleged that Hlavinka and the attorney had "conflicts of interest which cannot be resolved," and that Hlavinka had "made no prior requests for adjournments." The motion further represented that the attorney had spoken with the lawyer for the defendants who "consents to this adjournment and has no opposition to this court allowing present counsel to withdraw and allowing the Plaintiff an opportunity to obtain new counsel." On March 11, 1991, the trial court granted the motion to withdraw, and adjourned the case to April 23, 1991, for a status conference.

The status conference was held, as scheduled, on April 23, 1991. It was not reported. According to the judgment roll, Hlavinka advised the trial court and counsel for the defendants (who participated by telephone) that he had retained a new lawyer. A new status conference was set for May 23, 1991, to, according to the entry on the judgment roll, "give new counsel chance to review record."

On May 23, 1991, Hlavinka appeared for the status conference without a lawyer. According to the judgment roll, a conference was held in the trial court's chambers that was not reported. Later that day, there were proceedings that were reported, and the transcript is part of the record on appeal. At the on-the-record hearing, counsel for the defendants recounted the case's history subsequent to the withdrawal of Hlavinka's attorney:

> Blunt, Ellis and Loewi voluntarily agreed that Mr. Hlavinka could have sixty days to find another attorney. He came in in April and said that he had not

done so, but there was someone he thought could take the case. The Court said at that time he had to have an attorney by today representing him or the Court was going to dismiss the case. He does not have an attorney today. For that reason we believe we are entitled to a dismissal of this case, and we move for a dismissal.

Hlavinka responded by recounting the difficulty he was having in finding a lawyer that he could afford. He then told the trial court that he wanted to represent himself, and that he was "ready to begin whenever the Court would set" a trial date: "I know I asked for late '92, but if asking for late '92 means a dismissal, then I am prepared to go forward at any time that the Court says."

The trial court granted defendants' motion to dismiss, recounting that after Hlavinka's lawyer withdrew from the case, "[w]e agreed that Mr. Hlavinka could have sixty days to find a lawyer, and if he couldn't the case would be dismissed. Even that time was extended and the matter was set today for a status conference." The trial court further explained its reasoning:

> And now Mr. Hlavinka comes in this morning again and says he doesn't have an attorney. The case was scheduled to have been tried in February. It could have been dismissed then. It was put over until now to give you an opportunity to get an attorney and to determine how you wanted to proceed or if you wanted to proceed. I'm satisfied that every reasonable opportunity was provided to Mr. Hlavinka, and therefore, the motion to dismiss is granted.

Every natural person in Wisconsin has an absolute right to appear *pro se*. WIS. CONST. art. I, § 21(2) ("In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an

attorney of the suitor's choice."). Thus, it was error for the trial court to base dismissal of Hlavinka's action in whole or in part on Hlavinka's failure to retain counsel. Additionally, although the trial court does, of course, have the power, both inherent and statutory, to prevent unwarranted delay and the proliferation of stale lawsuits, *see* Rule 805.03, Stats.; *Lawrence v. MacIntyre*, 48 Wis. 2d 550, 556, 180 N.W.2d 538, 541 (1970), the withdrawal of Hlavinka's attorney, and Hlavinka's subsequent difficulty in retaining new counsel only minimally delayed the prosecution of his claims against the defendants. Indeed, as we have seen, Hlavinka specifically told the trial court that he was prepared to try the case *pro se* "at any time that the Court says." In light of this, and in view of the grant by the Wisconsin Constitution of the right to appear in court *pro se*, it can hardly be said that either the record or the law supports the trial court's conclusion, as recited in its order of dismissal, that Hlavinka "has failed to meet his burden of advancing this case for trial." The order of dismissal is reversed.[6]

---

[6] The defendants contend that there were other reasons, such as alleged discovery abuse by Hlavinka, that would support a dismissal. Although we are empowered to search the record in an effort to sustain a trial court's discretionary act, *see Hedtcke*, 109 Wis. 2d at 471, 326 N.W.2d at 732, appellate courts may not find facts, *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). Defendants have not pointed to any facts found by the trial court that would provide alternative grounds for dismissal of Hlavinka's action as sanction for failure to comply with procedural requirements. Additionally, much of defendants' recitation as to why the trial court may have been frustrated with Hlavinka's prosecution of the case concerns matters that are not part of the record, to which we are, of course, bound. *See In Matter of Guardianship of Eberhardy*, 102 Wis. 2d 539, 571, 307 N.W.2d 881, 895 (1981), *Wurtz*, 97 Wis. 2d at 107 n.3, 293 N.W.2d at 159 n.3.

## B. *Collateral Estoppel.*

In denying the defendants' motion for summary judgment on collateral-estoppel grounds, the trial court concluded that because the negligence and breach-of-contract claims "have different elements than those of fraud, the Commission's finding that Hlavinka suffered no damages as a consequence of the defendants' acts must necessarily be limited to the accusation of fraud." We disagree.

Collateral estoppel is a species of issue preclusion. *See Heggy v. Grutzner*, 156 Wis. 2d 186, 192, 456 N.W.2d 845, 848 (Ct. App. 1990). The general rule on issue preclusion is:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980); *Landess v. Schmidt*, 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983). There are thus three elements that must be satisfied before a party may assert issue-preclusion to prevent re-litigation of an issue of law or fact:

1. The issue of fact or law must have been "actually litigated and determined by a valid and final judgment" in the prior action.
2. The determination of the issue of fact or law in the prior action must have been "essential to the judgment" in the prior action.
3. The parties in the prior and subsequent actions must be the same.

*See* RESTATEMENT (SECOND) OF JUDGMENTS § 27; *Landess*, 115 Wis. 2d at 197, 340 N.W.2d at 219. If these elements are satisfied, it makes no difference that the claim asserted in the prior action is the same as or different than the claim asserted in the second action. RESTATEMENT (SECOND) OF JUDGMENTS § 27; *see also Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326 (1955) (collateral estoppel "precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit."). If the claims in the two actions are the same, the issue-preclusion "is sometimes designated as direct estoppel." RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment b; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 17 comment c.[7] "If, as more frequently happens, the second action is brought on a

---

[7] A second action on the same claim is generally precluded by the related doctrines of "merger" (plaintiff's claim against defendant is merged into a "valid and final personal judgment" plaintiff obtains against defendant on that claim) and "bar" (plaintiff's claim against defendant is barred by a "valid and final personal judgment" in defendant's favor on that claim). *See* RESTATEMENT (SECOND) OF JUDGMENTS § 17. Both "merger" and "bar" are subsumed in the concept of *res judicata. See ibid.* Wisconsin has adopted the "transactional view of claim or cause of action" set forth in RESTATEMENT (SECOND) OF JUDGMENTS § 24. *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 311, 334 N.W.2d 883, 886 (1983). Under that view, a subsequent action between the same parties is barred by *res judicata* principles if, in actions concerning the same transaction, there is an identity of claims as between the prior and the subsequent action so that the evidence, legal theory, or requested remedy at issue in the subsequent action could have been proffered or raised in the prior action. *Id.*, 113 Wis. 2d at 311-312, 334 N.W.2d at 886. The *res judicata* principles recognized by *DePratt* do not apply here because, as the trial court recognized, and as we explain below, the claims

different claim . . . preclusion is sometimes designated as collateral estoppel." RESTATEMENT (SECOND) OF JUDGMENTS § 27 comment b; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 17 comment c.

Absent controlling legislation to the contrary, determinations by administrative agencies acting in a judicial capacity are generally given preclusive effect in subsequent court actions between the same parties. *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986); *Acharya v. AFSCME, Council 24*, 146 Wis. 2d 693, 696-697, 432 N.W.2d 140, 142 (Ct. App. 1988); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 83. As the Supreme Court noted in *Elliott*, "giving preclusive effect to administrative fact-finding serves the value underlying general principles of collateral estoppel: enforcing repose." 478 U.S. at 798. Certain conditions must, however, be met:

asserted by Hlavinka before the trial court could not have been asserted before the Commodity Futures Trading Commission.

There are times when a second action on the same claim is not precluded by either merger or bar even though a valid and final judgment was entered in favor of one of the parties. Nevertheless, "direct estoppel" may prevent relitigation of an issue of fact or law that was actually determined by the valid and final judgement in the first action, as the following RESTATEMENT illustration makes clear:

> A brings an action against B for personal injuries arising out of an automobile accident. Jurisdiction is asserted over B, a nonresident, on the basis that the automobile involved in the accident was being operated in the state by or on his behalf. After trial of this issue, the action is dismissed for lack of jurisdiction. In a subsequent action by A against B for the same injuries, brought in the state of B's residence, the prior determination that the automobile was not being operated by or on behalf of B is conclusive.

*Id.*, § 27, comment b, illustration 3.

398

1. the administrative proceeding must have been properly before the agency;
2. the administrative agency must have been acting in a judicial capacity;
3. the issues for which preclusion is sought must have been actually determined by the administrative agency; and
4. the parties must have had an adequate opportunity to litigate those issues before the administrative agency.

*Frye v. United Steelworkers of America*, 767 F.2d 1216, 1220 (7th Cir. 1985), *cert. denied*, 474 U.S. 1007.

The prerequisites to the application of collateral estoppel are present here. First, there is no dispute about whether Hlavinka's reparation proceeding was properly before the Commodity Futures Trading Commission; it was. Second, there is no dispute about whether the Commission was acting in a judicial capacity when it denied Hlavinka's claim; it was. Third, there is no dispute about whether Hlavinka and the defendants had an opportunity to litigate their respective positions before the Commission; they did. The only dispute centers on whether the issue for which preclusion is sought, namely, if the acts of the defendants caused Hlavinka's damages, was actually determined by the Commission.

As we have seen, Hlavinka's complaint before the Commission focussed on the following contentions: that the defendants failed to fully apprise him concerning the amount the price of silver would be permitted to decline during a trading session before trading would, in effect, be suspended, and whether and when such limits were reached; that Fromm did not work it out for Hlavinka to liquidate his positions; and that Hlavinka could not keep abreast of the volatile market conditions because a television quote-screen in Blunt, Ellis & Loewi's office was

not working. Additionally, Pfeffer, the Blunt, Ellis & Loewi employee in charge of the futures division, was accused of improperly supervising Fromm. The Commission found that none of these alleged infirmities caused Hlavinka's losses.

As the trial court correctly recognized, Hlavinka's claim for relief in the reparations proceeding before the Commodity Futures Trading Commission under section 4(b) of the Commodity Exchange Act was limited to fraud. *See Blunt, Ellis & Loewi, Inc. v. Hlavinka*, 896 F.2d at 241; *see also Wasnick v. Refco, Inc.*, 911 F.2d 345, 347-348 (9th Cir. 1990). Although Hlavinka's circuit-court action alleges negligence and breach of contract, "it is not the similarity between the types of litigation or actions involved but between the factual issues and their roles in the respective actions that is important" to whether collateral estoppel will apply. *Frye*, 767 F.2d at 1220.

An essential issue in the reparations action was whether the acts by Blunt, Ellis & Loewi, Fromm, and Pfeffer, alleged by Hlavinka to be fraudulent, were the *cause* of Hlavinka's damages. By the same token, an essential element of Hlavinka's negligence and breach-of-contract claims in the circuit court is whether the defendants' alleged course of conduct caused Hlavinka's claimed losses. *See Erickson v. Prudential Property & Casualty Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552, 554 (Ct. App. 1991) (causation is an essential element of a negligence claim); *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986) (causation is an essential element of a breach-of-contract claim). Thus, if the acts underlying Hlavinka's reparations proceeding before the Commission are the same acts Hlavinka has alleged in support of his circuit-court

action, the Commission's determination that those acts did not cause Hlavinka's loss will preclude relitigation of the causation question in the instant action, and will thus require that the action be dismissed. *See Acharya,* 146 Wis. 2d at 696-698, 432 N.W.2d at 142 (collateral estoppel prevents re-litigation of issue previously determined by administrative agency).

Even an expansive reading of Hlavinka's amended complaint in the circuit-court action permits no conclusion other than that it asserts the same "transaction or occurrence or series of transactions or occurrences," *see* Rule 802.02(1)(a), Stats., as that which he asserted in his claim for relief before the Commodity Futures Trading Commission.[8]

---

[8] The pertinent portions of the complaint are:

5. That the Plaintiff entered into a contract, at the urging and invitation of the defendants, in August, 1982, with the defendant Blunt Ellis & Loewi, Inc. for services and advice in trading in the Commodity Futures Exchange.

6. That the defendant Blunt Ellis & Loewi, Inc. assigned the defendant John Fromm to be the broker servicing the Plaintiff.

7. That the defendant Blunt Ellis and Loewi, Inc. represented itself to the Plaintiff as an expert in Commodities Futures and pursuant to Contract the defendants and or their agents were supposed to have the expertise to know the market conditions and rules governing those conditions and keep the plaintiff sufficiently informed at all times of market conditions.

8. That the defendant John Fromm as an agent in the employment of Blunt Ellis & Loewi, Inc. set himself out as an expert in interpreting market conditions and related to plaintiff that he had the ability to service the Plaintiff according to any market conditions on any given day and the plaintiff relied on this apparent expertise.

9. That the defendant John Fromm on February 22nd, 23rd, 24th and 25th, 1983, negligently failed to properly interpret market conditions as the same relate to movement limits and thus negligently failed to inform the plaintiff of the conditions so that the Plaintiff could sell or otherwise dispose of his silver holdings.

10. That the defendant, Peter Pfeffer, negligently and in breach of contract failed to properly supervise defendant John

Hlavinka argues on appeal, both in his brief and on oral argument, that Blunt, Ellis & Loewi was not authorized to accept his wife's telephone order of February 23, 1983. He claims damage as a result, and submits that this issue was not before the Commission. Hlavinka's amended complaint does not, however, plead his wife's alleged lack of authorization to trade for his account, and, therefore, does not state a claim in connection with that matter.[9]

Fromm on the dates mentioned above in that he would have and should have known John Fromm lacked the necessary competence to interpret market movement limits.

11. That the defendants, in breach of the service contract, failed to service the plaintiff even when they finally realized market conditions were in a state of collapse.

12. That because of the above mentioned breach of contract the defendant Blunt Ellis & Loewi, INc. [ sic] breached the contract it entered into with the plaintiff through its agents John Fromm and Peter Pfeffer.

13. That John Fromm and Peter Pfeffer had a contractual duty to the Plaintiff, Ronald Hlavinka, as their profession allowed them to solicit the Plaintiff as a client with the full understanding that the duty conferred upon both of them was to protect the interest of the plaintiff according to whatever market conditions were prevailing on any given day.

14. That because of the breach of contract by the defendants, the Plaintiff suffered a financial loss in the amount of $35,000.00[.]

15. That because of the breach of contract and negligence of all of the defendants, the plaintiff suffered great mental stress and anguish.

[9] The decisions of both the administrative law judge and the United States court of appeals assumed that Hlavinka had authorized his wife to enter the February 23 order. Finding of fact number five in the decision issued by the administrative law judge states that "[o]n February 23, 1983, [Hlavinka]'s wife, with his concurrence bought one additional such [5,000-ounce silver futures] contract at $13.81" per ounce. *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, Comm. Fut. L. Rep. 23,324 at 32,095. Similarly, the federal appellate decision notes that on February 23, "Hlavinka's

In determining whether a complaint states a claim, we accept as true the facts pleaded in the complaint and all reasonable inferences that can be drawn from those facts. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). Wisconsin, like the federal system, has "notice pleading" so that legal disputes are resolved on the merits of the case rather than on the technical niceties of pleading. *Korkow v. General Casualty Co. of Wisconsin*, 117 Wis. 2d 187, 193, 344 N.W.2d 108, 112 (1984). If "notice pleading" is to have any efficacy at all, a pleading must give the defending party fair notice of not only the plaintiff's claim but "the grounds upon which it rests" as well. *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (interpreting Rule 8(a)(2) of the Federal Rules of Civil Procedure, the federal equivalent of Rule 802.02(1)(a), Stats.). As Professor James William Moore and Judge Harold F. Medina, Jr., recognized more than forty years ago in construing Rule 8(a)(2), " 'it is not

---

wife (with his consent) entered a limit order to purchase one long May 1983 contract at $13.81 or better, and this order was filled." *Hlavinka v. Commodity Futures Trading Commission*, 867 F.2d at 1031. Indeed, Hlavinka admitted during the course of the hearing before the administrative law judge that he authorized his wife to make the trade, and that he did not seek rescission once he learned that the trade had been executed. Thus, it appears that Hlavinka's contention that the Commission did not have before it the question of whether he authorized his wife to trade for his account is not entirely accurate. We will assume without deciding, however, that the Commission's determination on this issue was not relevant to the fraud claim—the only substantive issue over which it had jurisdiction. *Cf. Lightsey v. Harding, Dahm & Company, Inc.*, 623 F.2d 1219, 1222-1223 (7th Cir. 1980) (an administrative agency's determination on an issue "not relevant to a dispute over which it had jurisdiction" does not preclude relitigation of that issue), *cert. denied*, 449 U.S. 1077.

enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery.' " *Albert v. Dun & Bradstreet, Inc.*, 91 F. Supp. 283, 284 (S.D.N.Y. 1950) (quoting MOORE'S FEDERAL PRACTICE 1653 (2d ed. 1948)); *see also Klebanow v. New York Produce Exchange*, 344 F.2d 294, 299 (2d Cir. 1965) (complaint that merely alleged that "a defendant owns a car and injured plaintiff by driving it negligently" would not give adequate notice under the rule). Hlavinka's amended complaint, plaintiff's operative pleading in this action, does not allege that the defendants were negligent or that they breached their contract with him in accepting his wife's February 23, 1983, order, nor can that allegation be reasonably inferred from the facts he did plead. Accordingly, it is not material whether or not the Commission addressed that issue, or whether, if addressed, the issue was material to matters within its jurisdiction; the issue of whether Hlavinka's wife was authorized to enter the February 23, 1983, order was never before the trial court.

The Commission's determination that nothing the defendants were alleged to have done were a cause of plaintiff's damages may not be re-litigated here.

### III.

In conclusion, we reverse the trial court's order dismissing Hlavinka's complaint for Hlavinka's alleged failure to adequately advance the case to trial. We also reverse the trial court's order denying the defendants' motion for summary judgment. This matter is remanded to the trial court for the entry of judgment dismissing Hlavinka's amended complaint.

*By the Court.*—Orders reversed.