Kristine Kaskowski EDER and Catherine Nyman
Fields, Plaintiffs-Appellants,

v.

LAKE GENEVA RACEWAY, INC., and American Empire
Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 94–0535. Submitted on briefs May 16, 1994.—Decided
September 21, 1994.*

(Also reported in 523 N.W.2d 429.)

600

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James E. Snodgrass* of *Snodgrass & Dieringer* of Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Phyllis M. Santacroce* of *Borgelt, Powell, Peterson & Frauen, S.C.,* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J. Kristine Kaskowski Eder and Catherine Nyman Fields's personal injury action was dismissed by summary judgment based upon a standard form exculpatory contract signed by each of them. The issue is whether the form is a valid exculpatory contract releasing their claims against Lake Geneva Raceway, Inc. and its insurer. We hold that under the facts of this case, the form is void as against public

policy. Therefore, we reverse the trial court's granting of summary judgment for Raceway.

The following undisputed facts are taken from the pleadings, affidavits and interrogatories. Kaskowski and Nyman, along with their husbands, arranged to meet at Lake Geneva Raceway on August 24, 1990 to watch motorbike races. Neither Kaskowski nor Nyman had been there before.

As Kaskowski entered the parking lot to the raceway, her car was stopped and she was asked to pay an admission fee and to sign a form entitled Release and Waiver of Liability and Indemnity Agreement. Kaskowski was told that she must sign the form or she could not enter the raceway. Other spectators were waiting behind her. In her affidavit, Kaskowski stated that the form's "print was so small it could not be read rapidly" and consequently she did not read the form before signing it. In her answers to interrogatories, she also stated, "They did not tell you what you were signing, only that it was for the track records."

Likewise, as Nyman entered the raceway,[1] she stopped and paid an admission fee and was told that she must sign the release form or she could not enter. In her affidavit, Nyman stated that the print on the form was small and "other spectators were behind [her] trying to get in." In her answers to interrogatories, she stated that she asked the man taking the signatures, "What is this for? In case we get hurt?" Nyman never received an answer. She signed the form without reading it.

The form purports that the signees release, waive, discharge and covenant not to sue the track owner and

---

[1] Although the record shows that Kaskowski entered the grounds in her car, the record does not show how Nyman entered.

others from all liability "on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event." The form defines restricted area "as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place." At the bottom of the form are lines allowing for eighteen signatures.[2]

After paying the admission fee and signing the release form, Kaskowski and Nyman entered the bleacher area. There were no signs identifying areas as restricted. Kaskowski and Nyman were injured during the race when one of the motorbikes left the racetrack and struck each of them. At the time they were injured, they were standing about twenty-five feet west of the racetrack in an area between the bleachers and the racetrack.

Kaskowski and Nyman brought an action against the Raceway sounding in negligence and safe-place statute violations. Raceway moved for summary judgment on the grounds that the exculpatory contract released it from any liability for Kaskowski's and Nyman's injuries. The trial court granted the motion holding that Raceway was entitled to judgment as a

---

[2] Nyman signed one version of the release form, which contained places for eighteen persons to print and sign their names. Kaskowski signed another version of the form, which contained places for persons to indicate their car numbers and their job descriptions. A copy of the form signed by Kaskowski is set forth at the end of this opinion.

matter of law because the plaintiffs "should not be released from their signatures on the release because they failed to read it." The trial court also held that there was "[n]o evidence of acts or omissions to sustain the unsupported claim of negligence' on the part of the Defendants" and that there was "[n]o evidence of failure on the part of the Defendants to meet the requirements of the safe-place statute."

We review the trial court's grant of summary judgment de novo. *See Weigel v. Grimmett*, 173 Wis. 2d 263, 267, 496 N.W.2d 206, 208 (Ct. App. 1992). If the complaint states a claim and the answer joins the issue, we then must determine whether the depositions, answers to interrogatories, admissions on file and affidavits, if any, entitle a party to judgment as a matter of law. *Id.* Summary judgment must be entered if the evidentiary material shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS.

Kaskowski and Nyman contend that Raceway was not entitled to judgment as a matter of law because the release form is void as against public policy. Citing the trial court holding, Raceway argues that Kaskowski and Nyman, by their failure to read the agreements, have waived any arguments that the terms of the agreement are unfair. We do not agree with Raceway or the trial court. The failure to read a contract does not by itself affect the contract's validity. *State Farm Fire & Casualty Co. v. Home Ins. Co.*, 88 Wis. 2d 124, 129, 276 N.W.2d 349, 351 (Ct. App. 1979). Thus, Kaskowski's and Nyman's failure to read the agreement does

not by itself entitle Raceway to judgment as a matter of law.

Wisconsin case law has set forth several principles relevant to the determination of the validity of an exculpatory contract, and we discuss those principles here. Although exculpatory contracts are not per se invalid, they are not favored by the law and are to be strictly construed against the party seeking to rely on them. *Merten v. Nathan*, 108 Wis. 2d 205, 210-11, 321 N.W.2d 173, 176 (1982).

In determining whether an exculpatory contract contravenes public policy, courts must balance the principles of tort law and of contract law. *Id.* at 211, 214, 321 N.W.2d at 177, 178. Contract law is based on the principle of freedom of contract which protects the justifiable expectations of parties to an agreement, free from governmental interference. *Id.* at 211, 321 N.W.2d at 177. Tort law compensates individuals injured from the unreasonable conduct of another. Additionally, tort law, through the payment of damages, provides an incentive to prevent future harm. *Id.*

We conclude that the exculpatory contract here was not consistent with the principles of freedom of contract. Our supreme court stated in *Merten*, "Freedom of contract is premised on a bargain freely and voluntarily made through a process of bargaining which has integrity." *Id.* at 214, 321 N.W.2d at 178. We must carefully consider the terms of the agreement and the circumstances under which the parties entered the agreement to determine whether the contract expresses the intent of the parties with particularity. *See Arnold v. Shawano County Agric. Soc'y*, 111 Wis.

2d 203, 211, 330 N.W.2d 773, 777 (1983), *overruled on other grounds, Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 316-17, 401 N.W.2d 816, 821 (1987); *see also State Farm Fire & Casualty*, 88 Wis. 2d at 128, 276 N.W.2d at 350-51.

First, we consider the circumstances under which the parties entered the agreement. There are no facts showing that Raceway was willing to discuss the terms or intended to engage in a process whereby Kaskowski and Nyman could form the required intent to be bound to certain terms. The president of Raceway asserted in his affidavit that "[a]ll persons entering the restricted area are given adequate time to read the release." However, the undisputed facts do not support Raceway's conclusory allegation; the undisputed facts show that there was no meaningful opportunity for Kaskowski and Nyman to read the agreements before signing. Raceway secured the signatures of at least some of the entrants, including Kaskowski, while they were in their cars. We cannot believe Raceway intended that entrants would hold up the progression of cars into the racetrack in order to read the release. Furthermore, Raceway does not set forth any facts showing that patrons could step aside and read the agreements. Also, neither Kaskowski nor Nyman was given answers in response to their inquiries about the form; Raceway does not dispute this.

Raceway asks us to uphold the validity of its exculpatory agreement under the aegis of "freedom of contract." However, we cannot conclude, under the circumstances of this case, that there was a "bargain freely and voluntarily made through a process . . . which has integrity." *See Merten*, 108 Wis. 2d at 214, 321 N.W.2d at 178. As our supreme court stated in

*Richards v. Richards*, 181 Wis. 2d 1007, 1019, 513 N.W.2d 118, 123 (1994), "[T]he plaintiff's lack of an opportunity for discussing and negotiating the contract is significant when considered with the breadth of the release." Although negotiating the terms of the standardized contract used here might have been logistically unrealistic, we hold that, at a minimum, the plaintiffs should have had an opportunity to read and ask questions about the terms releasing liability. Therefore, we hold that Raceway was not entitled to judgment as a matter of law based on the exculpatory agreements.

Although we hold that the agreement is void as against public policy on the foregoing basis alone, we address the parties' other arguments for they provide additional reasons for our decision. Raceway also contends that the exculpatory agreements here are not against public policy because Kaskowski and Nyman were aware of the dangerous nature of the sport and thus their claims against Raceway were within the contemplation of the parties when they signed the releases.[3] In support of its position, Raceway cites two

---

[3] Raceway contends that exculpatory agreements involving racing sports are subject to less scrutiny than other exculpatory contracts and cites *Trainor v. Aztalan Cycle Club, Inc.*, 147 Wis. 2d 107, 116-17, 432 N.W.2d 626, 630-31 (Ct. App. 1988), as authority for this proposition. However, we think that Raceway misreads *Trainor*. In *Trainor*, we addressed the issue of whether the plaintiff motocross driver's accident and resultant injuries constituted the type of occurrences contemplated by the releases. Answering the question affirmatively, we stated that the inherent risks of racing are part of "the participants' success and the spectators' enjoyment." *Id.* at 116, 432 N.W.2d at 630. Thus, contrary to Raceway's reading of this language, the dangerousness of the sport is relevant to the intent of the parties,

court of appeals cases upholding exculpatory contracts in a racing context, *Kellar v. Lloyd*, 180 Wis. 2d 162, 509 N.W.2d 87 (Ct. App. 1993), and *Trainor v. Aztalan Cycle Club, Inc.*, 147 Wis. 2d 107, 432 N.W.2d 626 (Ct. App. 1988). Kaskowski and Nyman argue that these cases involve "race car drivers and their helpers" and therefore should be distinguished on the basis that the standards in those cases do not apply to spectators.

We agree that *Trainor* and *Kellar* are distinguishable. Exculpatory contracts are only enforceable as to "things within the contemplation of the parties at the time of execution of the release." *Trainor*, 147 Wis. 2d at 114, 432 N.W.2d at 629-30 (quoted source omitted). We apply this same rule of law, regardless of whether the party is a spectator or a participant.[4] In both *Trainor* and *Kellar*, the plaintiffs had significant familiarity with the sport and the places where the accidents occurred and with the terms of the involved releases. We held that the risk of the types of injuries and accidents incurred by the plaintiffs was within their

but not to the level of scrutiny employed by the court in deciding the validity of the exculpatory agreement.

[4] We are aware that other states have rules favoring the use of exculpatory contracts involving spectators. *See, e.g., Huber v. Hovey*, 501 N.W.2d 53 (Iowa 1993). That is not the policy in Wisconsin where exculpatory contracts are generally disfavored. We caution that we do not make the general statement that exculpatory contracts involving spectators are void as against public policy; our holding is that such exculpatory contracts should be strictly construed as are all exculpatory contracts.

contemplation when signing the exculpatory contracts.[5]

Here, the facts do not support the conclusion that Kaskowski and Nyman could have contemplated when signing the form the risk of a motorbike leaving the track and injuring them, even if they had read the form. Kaskowski and Nyman had never been to the raceway before the accident. Furthermore, they could not have inspected the racetrack grounds before signing because they were not allowed into the grounds unless they signed the form. Moreover, the form by its terms provides for inspection *after* signing it.[6] We conclude that the bargain here will not be enforced simply

---

[5] In *Trainor*, an experienced motocross driver acknowledged that he was prepared to accept the risks of serious injury because of his confidence in his racing skills. *Trainor*, 147 Wis. 2d at 110, 432 N.W.2d at 628. Additionally, he inspected the track before deciding to race and signing the release form. *Id.* In *Kellar v. Lloyd*, a volunteer "flagging and communications" worker had signed at least seven releases prior to her accident at a racetrack. *Kellar v. Lloyd*, 180 Wis. 2d 162, 169 & n.1, 509 N.W.2d 87, 89 (Ct. App. 1993). She had witnessed at least one accident per weekend that she worked. *Id.* at 173, 509 N.W.2d at 91. Furthermore, the worker received a manual describing the purpose of the release form. *Id.* at 174 & n.2, 509 N.W.2d at 91. The evidence was that she knew the legal effect of the exculpatory instrument. *Id.* at 177, 509 N.W.2d at 92.

[6] The form states that signees, "[i]n consideration of being permitted to enter for any purpose any **RESTRICTED AREA** . . . agrees and represents that he has, or will immediately upon entering any of such restricted areas . . . inspect such restricted areas . . . and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas."

because of the dangerous nature of the sport. Significant familiarity with the dangers involved plus knowledge of the terms of the release are necessary conditions precedent. These conditions are lacking here.

Kaskowski and Nyman also make two additional arguments contending that the terms of the agreement are ambiguous and, thus, even if they had read the agreements before signing them, they could not have deciphered a clear meaning. First, they contend that the term "restricted area" is vague and ambiguous because it is uncertain whether "restricted area" includes all areas on the property.[7] Kaskowski and Nyman contend that if the agreement is meant to cover all of the Raceway property, then Raceway should be required to clearly state that fact. We agree.

Courts construe broad releases strictly against the party seeking to rely on them and will not enforce a contract which has unclear and ambiguous terms. *Dobratz v. Thomson*, 161 Wis. 2d 502, 520, 468 N.W.2d 654, 661 (1991). Interpretation of a contract is a question of law which we review de novo. *Keane v. Auto-Owners Ins. Co.*, 151 Wis. 2d 686, 688-89, 445 N.W.2d 715, 716 (Ct. App. 1989), *aff'd*, 159 Wis. 2d 539, 464 N.W.2d 830 (1991).

Here, the exculpatory agreement defined "restricted area," in part, as "areas appurtenant to any area where any activity related to the event shall take place." We hold that this phrase is subject to at least

---

[7] Kaskowski and Nyman also contend that whether they were actually in a restricted area presents an issue of material fact. Because we hold that the agreement is ambiguous as a matter of law, this issue of fact is not material.

two interpretations and thus is ambiguous. One interpretation is that the entire grounds are a restricted area, including the spectator areas. Consulting a dictionary definition, we note another interpretation. A "restricted area" would generally be open to certain persons, such as event workers or participants, and off limits to all others, such as spectators. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (unabr. 1976). Thus, another interpretation is that a "restricted area" is a place that would be closed to spectators and would be designated as such on the raceway grounds. There was no such designation here.

Kaskowski and Nyman also argue that the exculpatory contract is ambiguously drafted as to whether it applies to spectators or to participants. Conversely, Raceway argues that the form clearly applied to spectators because the terms covered the signees while "*in or upon the restricted area*, and/or, competing, officiating in, *observing*, working for, or for any purpose participating in the event." (Emphasis added.) Essentially, Raceway contends the form clearly applies to spectators because it specifies persons "observing" and persons in the "restricted area." We cannot agree that this clause so clearly applies as Raceway says it does. Raceway's position that the agreement covers people while in a restricted area begs the question as to what constitutes a restricted area. Furthermore, "observing" is listed along with "competing, officiating . . . working for, or for any purpose participating in the event." These latter activities reasonably pertain only to event workers or participants. There is no contract language from which we can reasonably conclude that this single spectator activity of "observing" is set apart from activities applying only to workers or participants. Also, one

611

version of the form asks a signee to indicate the "JOB DESCRIPTION" and "CAR NO." Spectators have neither. We construe the agreement against Raceway and hold that it does not apply to spectators.

In a footnote to its brief, Raceway noted the trial court's finding that the complaint was insufficient. Raceway stated its agreement and "adopted the trial court's arguments by reference fully herein." Raceway did not raise the issue in its answer or by motion and does not develop the argument here. Ordinarily, we would not reach this issue because of inadequate briefing. *See Reiman Assocs., Inc. v. R/A Advertising, Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981). However, because of the dissent's fascination with the pleadings, we will address it.

Whether a complaint states a claim is a question of law which we review de novo. *Badger Cab Co. v. Soule*, 171 Wis. 2d 754, 760, 492 N.W.2d 375, 378 (Ct. App. 1992). "Pleadings are to be liberally construed, with a view toward substantial justice to the parties. The complaint should be dismissed as legally insufficient only if it is quite clear that under no circumstances can plaintiffs recover." *Dobratz*, 161 Wis. 2d at 513, 468 N.W.2d at 658 (quoted source omitted) (citations omitted). The purpose of pleadings is to notify the opposing party of the pleader's position in the case and to frame the issue to be resolved. *Hansher v. Kaishian*, 79 Wis. 2d 374, 385, 255 N.W.2d 564, 570 (1977).

Kaskowski and Nyman alleged in their complaint that they were injured "when one of the motor bikes engaged in a race, left the racetrack and struck both plaintiffs" and that "this striking was due to the negligence of the defendant." They further claim that this

612

alleged negligence was also a failure to "furnish a place of employment and a public building which was safe for . . . frequenters" contrary to the safe-place statute. Although the complaint may not have been as artfully drafted as it could have been, we hold that the allegations are minimally adequate to state the claims for negligence and safe-place statute violations, reasonably putting Raceway on notice as to Kaskowski and Nyman's position in the case. *See id.* We also point out again that Raceway never raised or argued the matter in the trial court, which leads us to believe that Raceway knew full well what the plaintiffs' claims were about.

*By the Court.*—Judgment reversed and cause remanded.

## RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT

DESCRIPTION AND LOCATION OF EVENT DATE RELEASE SIGNED

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgement that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releasees", from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise, while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

| SIGN NAME HERE | PRINT NAME HERE | JOB DESCRIPTION | CAR NO. |
|---|---|---|---|

*(signature table with handwritten entries, including "EXHIBIT B")*

ANDERSON, P.J. (*dissenting*). Because I conclude that the general allegations of negligence and violation of the safe place statute fail to fairly state a claim or claims upon which relief can be granted, I respectfully dissent.

614

This case is before us on an appeal from an order granting summary judgment. In reviewing this order de novo, the court of appeals employs the same process used by the circuit court. The first step in this process is to examine the complaint to determine whether a claim has been stated. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-77 (1980).

Under Wisconsin's Rules of Civil Procedure "notice pleading" is sufficient.[1] In determining whether a complaint meets minimum standards, there are several propositions that must be kept in mind. First, the complaint must be "liberally construed with a view to substantial justice to the parties." *Id.* at 351, 294 N.W.2d at 483. Second, Wisconsin's "notice pleading" statutes " 'reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive in the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' " *Canadian Pac. Ltd. v. Omark-Prentice Hydraulics, Inc.,* 86 Wis. 2d 369, 373, 272 N.W.2d 407, 409 (Ct. App. 1978) (quoting *Conley v. Gibson,* 355 U.S. 41, 48 (1957)). Third, "[i]f 'notice pleading' is to have any efficacy at all, a pleading must give the defending party fair notice of not only the plaintiff's claim but 'the grounds upon which it rests' as well." *Hlavinka v. Blunt, Ellis & Loewi, Inc.,* 174 Wis. 2d 381, 403, 497

---

[1] Section 802.02, STATS., provides, in part:

**General rules of pleading. (1)** CONTENTS OF PLEADINGS. A pleading . . . that sets forth a claim for relief . . . shall contain all of the following:

(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

N.W.2d 756, 765 (Ct. App. 1993) (quoting *Conley,* 355 U.S. at 47).

The operative paragraphs of Kaskowski and Nyman's complaint allege:

> 5. On August 24, 1990, both plaintiffs were attending motor bike races at Lake Geneva Raceway when one of the motor bikes engaged in a race, left the racetrack and struck both plaintiffs; that both plaintiffs were injured as a result of being hit by the motor bike and this striking was due to the negligence of the defendant, Great Lakes Raceway Inc., the owner of the premises where the incident occurred.
>
> 6. As a result of the negligence of defendant, Lake Geneva Raceway Inc., through its agents, servants and employees, both plaintiffs sustained permanent injuries and damages . . ..

### SAFE PLACE ALLEGATIONS

> 1. [Allegation that Lake Geneva Raceway, Inc. was the owner of a place of employment, § 101.01, STATS.; an employer, § 101.01; and the Lake Geneva Raceway was a place of employment and public building.]
>
> 2. The defendant, Lake Geneva Raceway Inc. . . . was negligent and violated section 101.11 of the Wisconsin Statutes in the following respects:
>
> a. On or about the 24th day of August, 1990, the plaintiffs, and each of them, sustained injuries on the premises owned, operated and controlled as a public building, and a place of employment. . ..
>
> b. That at the time of their injury, the plaintiffs were frequenters and patrons on the premises of the defendant. . ..

c. . . . [T]he premises owned, operated, maintained and controlled as a place of employment and as a public building was unsafe and in a dangerous condition; the defendant knew or should have known of the dangerous and unsafe condition; the defendant failed to furnish a place of employment and a public building which was safe for employees therein and for frequenters thereof, failed to adopt and use methods and processes reasonably adequate to render such employment and place of employment and public building safe, and failed to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees and frequenters, and failed to construct, repair and/or maintain such place of employment or public building as to render same safe; the said defendant had custody and control prior to and on or about the 24th day of August, 1990, of the premises; and the said defendant had sufficient time to correct such unsafe and dangerous condition.

Both the negligence claim and the safe-place claim are conclusory in nature. Neither claim puts Lake Geneva Raceway on notice as to how it was negligent or how it violated the safe-place statute.

"Notice pleading" does not permit a plaintiff to allege negligence in such a general fashion. "In order to state a cause of action for negligence, the following elements must be pleaded: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Keller v. Welles Dep't Store,* 88 Wis. 2d 24, 34, 276 N.W.2d 319, 323 (Ct. App. 1979) (quoted source omitted).

617

Before Wisconsin adopted "notice pleading," the supreme court had related what was necessary to state a claim for a cause of action:

> In pleading negligence and in setting forth the facts which are alleged to constitute negligence, only ultimate, not evidentiary facts, are to be pleaded; and if the pleading fairly informs the opposite party of what he is called upon to meet by alleging the specific facts which resulted in injury, and there is included a general statement that defendant negligently performed the acts complained of, the pleadings are sufficient. However, a complaint must still allege acts sufficient to show an invasion of some protected interest to state a cause of action. A complaint may fairly inform an opposite party what he is called upon to meet and yet not state a cause of action. . ..
>
> Facts from which plaintiff's primary right and defendant's corresponding duty arise, must appear in the statement of facts of the complaint in a personal injury action, together with facts showing a wrong by the defendant. [Citations omitted.]

*Padilla v. Bydalek,* 56 Wis. 2d 772, 775-76, 203 N.W.2d 15, 18 (1973). The statutory requirement that the complaint contain "a short and plain statement of the claim," identifying the occurrence or series of occurrences out of which the claim arises does not relieve a party from the minimum standard of *Padilla.*

Kaskowski and Nyman's allegation of negligence is general in nature. The complaint fails to inform the reader of Lake Geneva's duty of care toward Kaskowski and Nyman, it fails to inform the reader of how that duty of care was breached and it fails to inform the reader of the casual connection between Lake Geneva's conduct and the injuries suffered by Kaskowski and Nyman. At the most, it informs the reader that a motor

bike left the raceway and struck Kaskowski and Nyman. Other than alleging that Lake Geneva owned the raceway, the complaint fails to shed any light on what duty or duties Lake Geneva may have had to protect patrons and how Lake Geneva breached that duty or duties in this particular instance.

Unlike the majority, I am unwilling to read the negligence claim and the safe-place claim together and find reasonable inferences that support a conclusion that the complaint is sufficient. Not only does the complaint fail because it does not allege the four elements of negligence, it also fails because the safe-place allegation is nothing more than a recapitulation of the safe-place statute.[2] I am left with the nagging question of how did Lake Geneva fail to provide a safe place?

---

[2] The pertinent portions of the safe-place statute provide:

**101.11 Employer's duty to furnish safe employment and place. (1)** Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

**(2)** (a) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or

619

The safe-place allegation fails because "notice pleading" does not give a plaintiff the privilege to plead mere allegations that the defendant violated the safe-place statute. *See Klebanow v. New York Produce Exch.*, 344 F.2d 294, 299 (2d Cir. 1965) (holding that a mere allegation that a defendant violated antitrust laws is insufficient to state a claim for damages under federal pleading rule); *Precision Universal Joint Corp. v. Republic Parts, Inc.*, 83 F.R.D. 14, 16 (N.D. Ill. 1978). As drafted, the complaint does not provide even a trifling clue as to what action or inaction by Lake Geneva contributed to a violation of the safe-place statute. A mere allegation that Lake Geneva violated the safe-place statute as to Kaskowski and Nyman no more complies with the requirements of § 802.02(1), STATS., than a "complaint that merely alleged that 'a defendant owns a car and injured plaintiff by driving it negligently.' " *Hlavinka*, 174 Wis. 2d at 404, 497 N.W.2d at 765 (quoting *Klebanow*, 344 F.2d at 299).

I am mindful that discovery is available to a defendant to fill in the gaps of a bare-bones complaint. However, the over generalized allegations of Kaskowski and Nyman prevent meaningful discovery because Lake Geneva would have to first discover (1) the specific duty of care it owed Kaskowski and Nyman; (2) how it breached that duty; and (3) a causal connection between the conduct and the injuries before seeking to discover the evidence supporting the allegations. Rather than eliminate trial by ambush, the complaint of Kaskowski and Nyman raises it to a new art form.

I am mindful that "notice pleading" is preferable to the formal pleading requirements of years gone by. Despite the fact that the courts are now interested in

public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe.

the pursuit of justice rather than the quest for rigidity, I am satisfied that the complaint in this action is too general to state any claim for relief. Rather than engage in an educated guess as to what the drafter of the complaint meant to allege, we should hold the drafter to a requirement that in order to state a claim for relief the complaint must contain a short and concise statement of the grounds for the plaintiff's claim. I do not want to return to the verbose formality of yesteryear, but I do want to be able to read a negligence complaint and know that a plaintiff alleges he or she was injured because a defendant failed to provide adequate guards to prevent motor bikes from leaving the racetrack and striking spectators.